NORTHERN INDIANA TRANSIT, INC. *v.* BURK ET AL.

[No. 28,642. Filed February 2, 1950. Rehearing denied March 24, 1950.]

*Seebirt, Oare & Deahl;* and *Al W. Johannes,* all of South Bend, for appellant.

*James E. Keating* and *John W. Pfaff,* both of South Bend; *Marshall F. Kizer, George F. Stevens* and *Don F. Kitch,* all of Plymouth, for appellees.

EMMERT, J.—This is an appeal from a judgment rendered on a verdict, in the sum of $7,000 for personal injuries on an action brought by Corinne Burk, hereinafter referred to as the appellee, against the appellant and appellee Cyrus V. Hill.

The second amended complaint charged concurrent negligence by the appellant and Cyrus V. Hill which proximately caused the injuries. When the facts in evidence, together with all reasonable inferences to be drawn therefrom, are considered most favorable to the appellee Burk, the jury was justified in finding the collision happened in the following manner: Mishawaka Avenue in the City of South Bend, is a four lane public street, approximately 45 feet in width from curb to curb, running east and west and for several blocks east and west of the place of collision there were no curves or hills to obstruct the view. The night of January 6, 1944, at about 11:00 o'clock, the appellee became a passenger on appellant's bus, which was traveling east on Mishawaka Avenue, and arrived in front of a factory site on the south side of the avenue, where it stopped to take on about 25 passengers who had been working in the factory. The bus driver did not stop the bus parallel with the curb, but stopped at about a thirty degree angle with the curb line, with the front wheels being five feet from the curb and the rear end extending out into the next traffic lane. There was no ordinance of the city authorizing angle parking, and Mishawaka Avenue was not a part of the state

highway system. The bus was eight feet wide and 22 feet long; the inside of the bus was lighted, and the headlights and tail lights were burning. The night was cold and the pavement dry. The appellee was sitting on the left side of the rear seat when Hill, who had shortly before drunk some beer, drove the automobile eastward toward the scene of the collision.

Another automobile, with its lights burning, was approaching the place of collision from the east. Two women came from the front of the bus to cross the street, and Hill, who was driving at a negligent rate of speed, in order to avoid hitting the women and the car approaching from the east, drove his automobile into the rear of the bus, throwing the appellee from her seat and injuring her.

The errors assigned in the motion for new trial necessitate the proper construction of § 47-2123, Burns' 1940 Replacement,[1] which is § 109 of ch. 48 of the Acts of 1939 ("Uniform Act Regulating Traffic on Highways"). This section provides:

> "Except where angle parking is permitted by local ordinance for streets under local control and by order of the state highway commission on streets and highways in the state highway system, including the routes thereof through cities and towns, every vehicle stopped or parked upon a roadway where there is an adjacent curb shall be so stopped or parked with the right hand wheels of such vehicle parallel with and within twelve [12] inches of the right hand curb." (Acts 1939, ch. 48, § 109, p. 289.)

The appellant takes the position that by reason of the fact that its bus was a common carrier, it is

---

[1] This section was readopted in an amendment in 1947. Ch. 338, § 17, Acts of 1947, § 47-2123, Burns' 1940 Replacement (1949 Supp.).

excused from complying with the provisions of this section. The act itself creates no exemption, and the act in its definition of terms defines a bus as a motor vehicle. Sections 47-1802 and 47-1804, Burns' 1940 Replacement. See *Stafford* v. *Consolidated Bus Lines, Inc.* (1942), 179 Tenn. 185, 164 S. W. 2d 15; *Jaggers* v. *Southeastern Greyhound Lines, Inc.* (1942), 126 F. 2d 762. Nor has the City of South Bend adopted any ordinance under § 47-1828, Burns' 1940 Replacement, "Regulating the standing or parking of vehicles," which would make the stopping of the bus at an angle with the front end five feet from the curb proper. Traffic statutes should "receive a reasonable construction consistent with the purpose of their enactment and the practical difficulties that arise in their application to particular cases." *Conder* v. *Griffith* (1916), 61 Ind. App. 218, 224, 225, 111 N. E. 816, 819. It is obvious that the purpose of the section was to prohibit the operator of any motor vehicle from occupying an unreasonable amount of the street when stopped or parked, so that the safety of other moving traffic would be protected by giving the moving traffic as much space as possible. In fact the reasons for prohibiting angle stopping or parking by a bus are even stronger than prohibiting it from a passenger car, since the greater length of the bus would, if stopped at an angle, occupy more of the street.

There is a distinction between parking and stopping a motor vehicle. Webster's New International Dictionary (2d Ed.) defines the term "stop" to mean, "A cessation of motion, operation, progress, function, or the like." Parking includes stopping, but stopping does not necessarily result in parking. A leading case on the question of parking has defined the term as follows:

". . . The term 'parking,' as applied to automobile and automobile traffic, has a well-defined meaning, understood by all automobile drivers to mean not only the voluntary act of leaving a car on the street unattended but also the stopping of a car on the highway though occupied and attended for a length of time inconsistent with the reasonable use of a street, considering the primary purpose for which streets exist. Streets exist primarily for the purpose of travel."
*Wonewoc* v. *Taubert* (1930), 203 Wis. 73, 77, 78, 233 N. W. 755, 72 A. L. R. 224.

The reasonableness of the purpose, place and length of the stopping of the vehicle may determine whether the cessation of motion is a mere stop or a parking. See 5 Am. Jur. § 334, p. 682;[2] *Andrews* v. *City of Marion* (1943), 221 Ind. 422, 430, 47 N. E. 2d 968; *Dare* v. *Boss* (1924), 111 Ore. 190, 224 Pac. 646; *Leveillee* v. *Wright* (1938), 300 Mass. 382, 15 N. E. 2d 247. The uniform act has been carefully prepared, and it is difficult to presume the draftsmen were careless in the use of language, or that in the many places where the word "stop" is used, it means not only stop but also parking, for parking under any possible definition includes stopping. Under appellant's contention the term "stop" would be mere surplusage in the act. Moreover, the dangers to the traveling public from stopping in an unreasonable manner may be just as serious as stopping a sufficient length of time to become parking.

---

[2] "The term 'parking,' as applied to automobiles, includes not only the voluntary act of leaving a car on the street unattended, but also the stopping of a car on a highway, though occupied and attended, for a length of time inconsistent with a reasonable use of the street for the purpose of travel, but does not generally include stopping at the curb for the purpose of taking in, or letting out, persons, or for the purpose of loading or unloading goods." 5 Am. Jur. § 334, p. 682.

In construing § 47-2123, Burns' 1940 Replacement, it is not possible to furnish a mathematical formula for construing the numerous other safety requirements of the Uniform Act Regulating Traffic on Highways, and the effect of this decision must be limited to the section under consideration. Nor is it possible to give an extended discussion of the principles involved in determining whether a violation of a statutory duty is negligence *per se,* or merely prima facie evidence of negligence. Quite often the cases in the discussion of statutory negligence have failed to distinguish between negligence which results from the breach of the duty, and actionable negligence which involves failure to perform an established duty which proximately causes injury to the plaintiff.[3] When the breach of a statutory duty is held to be negligence *per se,* or negligence as a matter of law, the court holds that the legislature has created an absolute duty, which cannot be escaped by attempting to prove that the breach was in fact done in the exercise of due care. *Prest-O-Lite Co.* v. *Skeel* (1914), 182 Ind. 593, 106 N. E. 365; *Gerlot* v. *Swartz* (1937), 212 Ind. 292, 7 N. E. 2d 960; *O'Donnell* v. *Elgin, Joliet & E. R. Co.* (1949), 338 U. S. 384, 94 L. Ed. 170, 70 S. Ct. 200; *Carter* v. *Atlanta & S. A. B. R. Co.* (1949), 338 U. S. 430, 94 L. Ed. 183, 70 S. Ct. 226. The defendant may prove that he was not guilty of any act or omission which breached the duty and so avoid liability. Or even if the act or omission in breach of the statutory duty does not proximately result in injury under the principles of causation, it is still not actionable negli-

---

[3] For discussion of actionable negligence see 45 C. J. § 2, p. 632; 38 Am. Jur. § 11, p. 651; *Bain, Admx.* v. *Mattmiller* (1938), 213 Ind. 549, 13 N. E. 2d 712; *Terre Haute, etc. Traction Co.* v. *Phillips* (1921), 191 Ind. 374, 132 N. E. 740; *Faris* v. *Hoberg* (1892), 134 Ind. 269, 33 N. E. 1028.

gence. A violation of the statutory duty must be also a proximate cause of the injury to constitute actionable negligence. *Prest-O-Lite Co.* v. *Skeel* (1914), 182 Ind. 593, 106 N. E. 365, *supra; Beckstein* v. *Sayler, Admr.* (1932), 93 Ind. App. 686, 179 N. E. 581.

The general rule is that a violation of a statute enacted for reasons of safety is negligence *per se,* or negligence as a matter of law. *Rentschler* v. *Hall* (1946), 117 Ind. App. 255, 69 N. E. 2d 619; *Cook* v. *Ormsby* (1909), 45 Ind. App. 352, 89 N. E. 525. "Where a standard of duty is fixed, and its measure defined by law, the omission of that duty is negligence *per se." Prest-O-Lite Co.* v. *Skeel* (1914), 182 Ind. 593, 600, 106 N. E. 365, *supra.* It has been held that the violation of statutory requirements as to lights, flares, reflectors and brakes creates an absolute duty and constitutes negligence *per se.*[4] At common law the right to stop at a reasonable place and in a reasonable manner is an incident of the right to travel. 2 Blashfield, *Cyc. of Automobile Law and Practice* § 1191 (Perm. Ed.). Mechanical failure, obedience to police officers, partial road blocks, persons standing in the street, obstructions, conditions in the street dangerous to life or property, congested traffic situations, or other vehicles already stopped or parked may prevent an operator from stopping parallel with and not more than within twelve inches of the right hand curb. It must be borne in mind that a common

[4] Flares: *Gerlot* v. *Swartz* (1937), 212 Ind. 292, 7 N. E. 2d 960; *Winder & Son, Inc.* v. *Blaine* (1940), 218 Ind. 68, 29 N. E. 2d 987. Lights: *Gerlot* v. *Swartz, supra; Associated Truck Lines* v. *Velthouse* (1949), 227 Ind. 139, 84 N. E. 2d 54; *Northwestern Transit, Inc.* v. *Wagner* (1945), 223 Ind. 447, 61 N. E. 2d 591. Brakes: *Rentschler* v. *Hall* (1946), 117 Ind. App. 255, 69 N. E. 2d 619. Reflector on bicycle: *Beckstein* v. *Sayler, Admr.* (1932), 93 Ind. App. 686, 179 N. E. 581.

carrier bus has the positive duty to receive and discharge passengers, and that contract carriers and common carriers of freight have the duty to deliver their cargoes. Other operators of motor vehicles in the exercise of the right to travel have the right to make reasonable stops as an incident thereto. However, that which might constitute an excuse for stopping for a reasonable purpose and time might not be an excuse for parking, which may involve more than a temporary interference with other moving traffic. In view of these considerations which must have been well known to the legislature we do not believe that § 109 of the act intended to create any absolute and conclusive duty the technical violation of which would not be subject to any excuse.

Under previous statutory provisions prohibiting the operator of a motor vehicle from driving to his left of the center of the highway, it has been held that the violation thereof was prima facie evidence of negligence. *Lorber* v. *Peoples Motor Coach Co.* (1929), 89 Ind. App. 139, 164 N. E. 859, 172 N. E. 526. See also *Jones* v. *Cary* (1941), 219 Ind. 268, 284, 37 N. E. 2d 944; *Gamble* v. *Lewis* (1949), 227 Ind. 455, 85 N. E. 2d 629; *Conder* v. *Griffith* (1916), 61 Ind. App. 218, 223, 224, 111 N. E. 816, *supra*. The same considerations with equal force favor a similar construction for § 109 of the act. Such a construction does not place an unreasonable burden upon the operator of a motor vehicle, including common carrier busses. Under the rule that a violation of such a duty is prima facie evidence of negligence, the operator may be excused from compliance with this section, but the duty of coming forward with the evidence to show such excuse is upon him. *Gerlot* v. *Swartz* (1937), 212 Ind. 292, 7 N. E. 2d 960, *supra; Jones* v. *Cary* (1941), 219 Ind. 268, 37

N. E. 2d 944, *supra; Watt* v. *Associated Oil Co.* (1927), 123 Ore. 50, 260 Pac. 1012. In this case the appellant's theory of defense was that it had substantially complied with the statute, not that there was any fact that would excuse the violation thereof.

Appellee Hill's requested instruction No. 5 correctly instructed the jury that a violation of § 47-2123, Burns' 1940 Replacement, was prima facie negligence. However, the court also gave to the jury appellee Burk's requested instruction No. 6 which in substance stated that if the bus was stopped or parked with its right hand wheels more than twelve inches from the curb, such action constituted negligence. Although this latter instruction would have been error if there were any facts in evidence showing an excuse for non-compliance with the statutory directions as to stopping or parking, no excuse is shown by the evidence in this case. Therefore, under the facts in this appeal stopping the bus in violation of the statute became negligence as a matter of law. The giving of these instructions was not reversible error.

Appellant's objections to appellee Hill's requested instruction No. 3 which was given to the jury were too general to comply with Rule 1-7, and, therefore, failed to present any question for determination upon appeal. *Allman* v. *Malsbury* (1946), 224 Ind. 177, 65 N. E. 2d 106; *McCague* v. *N. Y. C. & St. L. R. Co.* (1947), 225 Ind. 83, 71 N. E. 2d 569; *Chandler* v. *Kraner* (1947), 117 Ind. App. 538, 73 N. E. 2d 490.

The objections to Hill's requested instruction No. 4 misinterpreted the language and effect of the instruction. The instruction in substance told the jury that the appellee Hill was not an insurer of the safety of pedestrians although he was required

by law to exercise reasonable and ordinary care "having in view all the conditions and circumstances existing at the time, and the possible use of other travelers upon the highway, who were also under the duty to exercise reasonable and ordinary care for their own safety." This correctly stated the law, and no fact in controversy was assumed as true by the instruction.

Appellant's requested instructions No. 7 and No. 8 were refused. These instructions sought to withdraw from the consideration by the jury the appellee's contention that the bus failed to give statutory signals of an intention to turn and stop. Appellee's brief fails to answer or avoid these propositions, and we are not cited to any evidence in the record which would justify submitting these issues to the jury. Upon proper request, the trial court should withdraw from the consideration of the jury any issue upon which there is no evidence. *Craig, Exrx.* v. *Citizens Trust Company* (1940), 217 Ind. 434, 26 N. E. 2d 1006; *Hynds* v. *Hays* (1865), 25 Ind. 31; *Williamson* v. *Yingling* (1881), 80 Ind. 379. The refusal to give these instructions was error.

Appellant's requested instruction No. 9 attempted to give an incomplete definition of negligence. Other instructions covered the matter of burden of proof, and refusal to give this instruction was not error.

The appellant contends that the verdict was not sustained by sufficient evidence as to it, on the theory that even if there was negligence in stopping the bus it only created a dangerous condition, which was not a proximate cause of the collision, by reason of the fact that the negligence of the appellee Hill was an intervening cause which relieved it of liability. However, the correct rule under the facts

in this appeal has been stated by this court in *Indianapolis Union R. Co.* v. *Waddington* (1907), 169 Ind. 448, 459, 460, 82 N. E. 1030, as follows:

". . . The editor of the American State Reports, in the course of a carefully prepared note on the subject of proximate and remote cause says, that the most frequent exception to the rule that a defendant is not, in general, liable for an independent act of negligence by a third person 'is to be found in that numerous class of cases in which a person by his negligence produces a dangerous condition of things, which does not become active for mischief until another person has operated upon it by the commission of another negligent act, which might not unreasonably be anticipated to occur. The original act of negligence is then regarded as the proximate cause of the injury which finally results. The principle is, that the first act is regarded as being continuous in its operation up to the time of the second, and therefore, for the purposes of fixing the defendant's liability, the two acts are treated as contemporaneous.' *Gilson* v. *Delaware, etc., Canal Co.* (1892), 36 Am. St. 802, 845."

Later in *Opple* v. *Ray* (1935), 208 Ind. 450, 456, 195 N. E. 81, it was stated that, "an intervening agency will not be deemed the sole proximate cause of an injury where the circumstances surrounding the intervention were such as could reasonably have been expected to occur in the ordinary course of events as indicated by common experience."

Judge Lairy, in *Cleveland, etc., R. Co.* v. *Clark* (1912), 51 Ind. App. 392, 403, 97 N. E. 822, clearly stated the rule as follows:

". . . Where there is an intervening, responsible agency, which directly produces the injury, as in this case, the question as to whether the original negligence is to be regarded as the proximate cause of the injury, or only as a condition, or remote cause, is to be determined by ascertaining

whether the agency which intervened was of such a character, and the circumstances under which it occurred were such, that it might have been reasonably expected that such agency or a similar one would intervene in such a way as to be likely to produce an injury similar to the one actually caused. If, under the circumstances, the intervention of such an agency in the manner stated might reasonably have been expected in the usual course of events and according to common experience, then the chain of causation, extending from the original, wrongful act to the injury, is not broken by the independent, intervening agency, and the original wrongful act will be treated as a proximate cause."

These tests are in accord with the statement in 2 *Restatement, Torts,* p. 1184, § 439, as follows:

"If the effects of the actor's negligent conduct actively and continuously operate to bring about harm to another, the fact that the active and substantially simultaneous operation of the effects of a third person's innocent, tortious or criminal act is also a substantial factor in bringing about the harm does not protect the actor from liability.

". . .

"b. If the harm is brought about by the substantially simultaneous and active operation of the effects of both the actor's negligent conduct and of an act of a third person which is wrongful towards the other who is harmed, the conduct of each is a cause of the harm, and both the actor and the third person are liable."

See also 45 C. J. § 485, pp. 920, 921, 922, 923. We cannot say that the jury would not have the right to draw the inference that it was reasonably foreseeable that stopping the bus at an angle in violation of the statute might be a cause of a collision with another car approaching from the rear, even though negligently operated. The reasoning in *Leveillee* v. *Wright* (1938), 300 Mass. 382, 389, 15 N. E. 2d 247, 251, where a dis-

abled truck was left for many hours on a bridge in the nighttime, is applicable here. The court in that case said:

". . . It was not necessary that the defendant should have foreseen the precise manner in which the accident might result. *Hill* v. *Winsor*, 118 Mass. 251, 259. *Perlman* v. *Burrows*, 270 Mass. 182, 184 [169 N. E. 897]. *Morse* v. *Homer's Inc.* 295 Mass. 606, 610 [4 N. E. 2d 625]. *Bellows* v. *Worcester Storage Co.* 297 Mass. 188, 195 [7 N. E. 2d 588]. We think that it could have been found that in its general nature, what actually occurred was a probable consequence of the defendant's negligence, when all the attendant circumstances are considered, and that it was not something which was only remotely and slightly probable."

The negligence of the operator of a motor vehicle in stopping or parking his car may be a proximate cause of injury even though the negligence of the operator of another motor vehicle is an active force in contributing to the final result. *Winder & Son, Inc.* v. *Blaine* (1940), 218 Ind. 68, 29 N. E. 2d 987, *supra; Walters* v. *Rowls* (1938), 105 Ind. App. 632, 16 N. E. 2d 969; *Eberhart* v. *Abshire* (1946), 158 F. 2d 24; *Louisville Taxicab & Transfer Co.* v. *Reno* (1931), 237 Ky. 452, 35 S. W. 2d 902.

The verdict was sustained by sufficient evidence and was not contrary to law. There was ample evidence to sustain the damages awarded by the jury. For the errors in refusing appellant's requested instructions No. 7 and No. 8, the judgment is reversed.

Starr, J. and Young, J., concur in the result.

NOTE.—Reported in 89 N. E. 2d 905.