NEW YORK CENTRAL RAILROAD COMPANY *v.* CAVINDER, ETC.

[No. 20,015. Filed November 15, 1965. Rehearing denied January 25, 1966. Transfer denied May 16, 1967.]

*Richard O. Olson,* of Chicago, Illinois, and *Owen W. Crumpacker, George V. Burbach, Richard P. Komyatte* and *Crumpacker, Burbach & Abrahamson,* all of Hammond, for appellee.

*Paul Reed* and *Reed & St. Martin,* both of Knox, for appellee.

FAULCONER, J.—Ronald Cavinder, 17 years of age, sustained personal injuries when the Volkswagen Sedan in which he was riding as a guest passenger and which was being driven by his mother, collided with a New York Central freight train at a grade crossing in Tefft, Indiana, at approximately 1:30 P.M. on December 31. Acting by and through his father as next friend, he filed suit in the Jasper Circuit Court. The case was venued to the Porter Superior Court on application of plaintiff-appellee. The jury returned a verdict for appellee in the amount of $10,000, and costs. Judgment was duly entered on the verdict. Appellant's motion for new trial, duly filed, was overruled. Appellant's sole assignment of error is the overruling of its motion for new trial.

Appellant's motion for new trial contains eleven specifications of error. Appellant, in its brief, argues only specifications 1, 2, 4, 5, 9 and 10. Therefore, all other grounds for new trial are waived. *Farm and Home Insurance Company* v. *Konradi* (1964), 136 Ind. App. 356, 199 N. E. 2d 726, 728.

Appellant asserts, in the argument section of its brief, that the following specifications of error raise identical questions of law and are, therefore, grouped and argued together.

SPECIFICATION 1—The verdict of the jury is not sustained by sufficient evidence.

SPECIFICATION 2—The verdict of the jury is contrary to law.

SPECIFICATION 5—Error of law occurring at the trial in that the court erroneously overruled the motion of the defendant, made at the close of all the evidence, to direct the jury to return a verdict for the defendant.

Although appellant subdivides its argument of these specifications under headings "A" through "E", the substance of its argument is that the failure of appellant to sound its whistle and bell, if there were such a failure which appellant denies, such failure, if negligence, was not the proximate cause of the collision; that the undisputed facts show that the automobile in which appellee was riding could have stopped in ample time after receiving knowledge of the approach of appellant's train had it not been for ice on the highway causing the automobile to skid; that the ice on the highway was the proximate cause of the collision and resultant injuries and, therefore, it was a question of law; and that the trial judge should have sustained appellant's motion for a directed verdict.

Two of the essential elements of plaintiff-appellee's case were that the defendant-appellant was negligent and that said negligence was the proximate cause of plaintiff- appellee's injuries.

The record in this case discloses the following facts most favorable to appellee:

Appellee was a guest passenger in an automobile being driven by his mother in a northerly direction along a county highway which highway runs in a general north and south direction through the village of Tefft, Indiana, and intersects at right angles with the tracks of appellant's railroad. A building, housing a grain elevator, was located to the south of appellant's tracks and the west end of said building was approximately 250 feet east of the highway.

The building was approximately 60 feet tall, 100 feet long, and 80 feet wide. Immediately north of the building was a side track and north of it was appellant's main track. When the driver of the automobile, in which appellee was riding, saw smoke coming "over the tops of boxcars" on the side track she had already shifted her automobile into the lower gears and was traveling 10-15 miles per hour, and she stepped on the brakes and the car skidded on the ice and didn't stop prior to the impact with appellant's train which was coming from the east. Tefft Road was a blacktop, two-lane road, and on the day of this occurrence it was covered with ice and very slippery. The weather was cold, and it was raining and freezing and there was some sleet. The crossing had no signals, but did have the standard disk sign south of the crossing and the crossbuck. Appellee and his mother were familiar with the crossing. Neither appellee nor his mother heard a train whistle or bell.

Appellant asserts in its brief that testimony of the driver of the automobile shows that she could have stopped the car after she received knowledge of the approach of the train except for the ice on the road. A careful reading of all of the cross-examination by appellant's counsel of the driver of the automobile concerning this issue fails to convince us that is was as conclusive as appellant contends. Such cross-examination, in pertinent part, is as follows:

"Q   If it hadn't been for the icy pavement you would have had no trouble stopping, isn't that true?

In other words, if it hadn't been for the icy pavement you would have had no trouble stopping without running into the side of the train, isn't that true?

"MR. REED:   We object because it assumes she ran into the side of the train.

"MR. CRUMPACKER:   All right, without the collision.

"THE WITNESS:   Would you repeat, please?

"Q   I mean, if it hadn't been for the ice on the asphalt you wouldn't have had any trouble avoiding a collision, would you?

Don't look at Mr. Reed.

"A   I'm not looking at him.

"Q    What?

"MR. REED:    I'm not very nice to look at but she can look if she wants to.

"MR. CRUMPACKER:    Well, I would prefer if she would look after she answers the questions, not before.

"THE WITNESS: A I guess not.

"Q    Your answer is you think not?

"A    I said there wouldn't have been one, maybe.

"Q    You mean there wouldn't have been a collision? Is that what you mean?

"A    I guess so."

Under our law the credibility of this witness and the inferences to be drawn from her testimony, as well as the weight thereof, were to be determined by the jury. *Midwest Oil Company, Inc.* v. *Storey* (1962), 134 Ind. App. 137, 149, 178 N. E. 2d 468, 474, (Transfer denied).

Appellant further relies upon the testimony of the Police Officer to the effect that a Volkswagen automobile traveling at 10-15 miles per hour could have stopped within 40 feet on asphalt icy pavement on normal application of brakes. This testimony was based upon a hypothetical question which included definite facts as to speed and distance and conditions. However, a reading of the record on this issue discloses that there is conflict as to the exact speed the automobile was traveling, the distance from the south of the tracks when the brakes were first applied, thus leaving to the jury to determine the weight and credibility to be given to the testimony of this witness on this particular point.

Appellant further contends that the trial court should have held, as a matter of law, that the ice on the highway was the sole cause of the collision and resulting injuries.

As authority for its proposition that ice is an intervening cause as a matter of law, appellant cites one decision from each, Indiana, Illinois and New Hampshire, and four decisions

of the United States Circuit Court of Appeals. We feel these cases are distinguishable from the case at bar.

Although the Indiana case, *Holtz* v. *Elgin, etc, Ry. Co.* (1951), 121 Ind. App. 175, 98 N. E. 2d 245, held, as a matter of law, that ice was an intervening cause, the opinion specifically states that it was applying the law of Illinois. The court based its opinion on an Illinois case, *Berg* v. *New York Cent. R. Co.* (1945), 391 Ill. 52, 62 N. E. 2d 676, also cited by appellant. The rule laid down in the *Berg* case is questionable in light of later Illinois cases.

The other cases cited involve the States of Iowa, New Hampshire, Nebraska and Illinois, and one case involves an occurrence in Indiana. The United States Circuit Court of Appeals reversed the Federal District Court for the Northern District of Indiana in *Hart* v. *Wabash R. Co.* (7th Cir. 1949), 177 F. 2d 492. The Circuit Court of Appeals held that the only cause of the collision was the slippery condition of the highway. There is, however, one important fact in the *Hart* case that is absent in the present case, and that is the unobstructed view of the tracks in the direction from which the train was approaching. In the *Hart* case no Indiana law or decisions were referred to as authority on the subject of proximate cause or intervening agency therein.

In order not to unduly lengthen this opinion by discussing each case cited by appellant on the question of proximate cause and intervening cause, which cases we have duly considered, we feel it sufficient to say that the law appellant quotes therefrom is generally the law in Indiana. However, we cannot agree with appellant's application of such law to the factual situation in this case and the conclusions it has reached. Indeed, in several of the cases the law quoted therefrom by appellant was held not to apply to the facts of the cases cited.

We are confident, after a thorough review of the issues herein involved, that this issue can be determined using the

law as set forth in Indiana decisions and their application to the facts in the case presently before us.

A proximate cause of an injury is the cause which sets in motion the chain of circumstances leading up to the injury and has been defined as that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the result complained of and without which the result would not have occurred. *Moran* v. *Poledor* (1926), 84 Ind. App. 266, 273, 151 N. E. 140; 21 Ind. Law Encyc., Negligence, § 61, p. 319.

> "Proximate cause is the act that immediately causes, or fails to prevent, an injury that might reasonably have been anticipated would result from the negligent act or omission charged, and without which such injury would not have occurred. The test is to be found in the probably injurious consequences that were to be anticipated, and not in the number of subsequent events or agencies that might arise to bring about such consequences. *Evansville Hoop. etc., Co.* v. *Bailey, supra,* [ (1909), 43 Ind. App. 153] and authorities cited." *Balzer* v. *Waring* (1911), 176 Ind. 585, 593, 95 N. E. 257, 260, 48 L. R. A., N. S. 834; *Swanson* v. *Slagal, Administratrix* (1937), 212 Ind. 394, 406, 8 N. E. 2d 993, 998; *Pennsylvania Railroad Co.* v. *Huss* (1933), 96 Ind. App. 71, 79, 180 N. E. 919, 922 (Transfer denied).

The Indiana courts regard foreseeability of injury as an essential element or fundamental test of proximate cause, and hold that negligence will not be deemed to have been the proximate cause of an injury so as to impose liability therefor unless the consequence was one which, in the light of attending circumstances, ought, could, or should reasonably have been foreseen or anticipated. *Northern Ind. Transit, Inc.* v. *Burk* (1950), 228 Ind. 162, 176, 177, 89 N. E. 2d 905, 17 A. L. R. 2d 592; *Swanson* v. *Slagal, Administratrix, supra* (1937), 212 Ind. 394, 413, 414, 8 N. E. 2d 993; *Phares* v. *Carr* (1952), 122 Ind. App. 597, 603, 106 N. E. 2d 242 (Transfer denied) ; *McIntosh* v. *Pennsylvania R. Co.* (1942), 111 Ind. App. 550, 559, 38 N. E. 2d 263. 21 Ind. Law Encyc., Negligence, § 65, p. 325.

Where there is an independent responsible agency intervening between the defendant's negligence and the injury, the question whether the original negligence is the proximate cause of the injury is to be determined by whether the agency might have been reasonably expected under the circumstances to intervene in such a way as to be likely to produce an injury similar to the one actually caused. *Northern Ind. Transit, Inc.* v. *Burk, supra* (1950), 228 Ind. 162, 175-177, 89 N. E. 2d 905, 17 A. L. R. 2d 592; *Engle, Admr.* v. *Director General Railroads* (1922), 78 Ind. App. 547, 551, 133 N. E. 138 (Transfer denied). 21 Ind. Law Encyc., *Negligence,* § 67, p. 331.

Generally, where harmful consequences are brought about by intervening independent forces the operation of which might have been reasonably foreseen, then the chain of causation extending from the original wrongful act to the injury is not broken by the intervening and independent forces and the original wrongful act is treated as a proximate cause. *Northern Ind. Transit, Inc.* v. *Burk, supra* (1950), 228 Ind. 162, 176-177, 89 N. E. 2d 905, 17 A. L. R. 2d 592; *Chicago, etc. R. Co.* v. *Mitchell* (1914), 56 Ind. App. 354, 358-359, 105 N. E. 396; *Leatherman* v. *Gateway Transportation Company* (7th Cir. 1964), 331 F. 2d 241, 243. 21 Ind. Law Encyc., Negligence, § 67, p. 332.

An intervening cause with respect to the doctrine of proximate cause does not mean a concurrent or contributing cause, but a superseding cause, which is itself the natural and logical cause of the harm or the immediate and direct cause of the injury. *Leatherman* v. *Gateway Transportation Co., supra.* 21 Ind. Law Encyc., Negligence, § 67, p. 330, *supra.*

Although it may be strictly accurate to say that there can be but one proximate cause of an injury several elements

may combine to make up the proximate cause of an injury, and in order to render a person liable his negligence need not be the sole proximate cause of an injury; it being sufficient that his negligence, combining with one or more efficient causes, other than plaintiff's fault, is the proximate cause of the injury. *City of Indianapolis* v. *Willis, Administrator* (1935), 208 Ind. 607, 618, 194 N. E. 343. 21 Ind. Law Encyc., Negligence, § 66, p. 328. See also: *Northern Ind. Transit, Inc.* v. *Burk, supra* (1950), 228 Ind. 162, 177, 89 N. E. 2d 905, 17 A. L. R. 2d 592; *Swanson* v. *Slagal, Administratrix, supra* (1937), 212 Ind. 394, 412-413, 8 N. E. 2d 993.

The issue of proximate cause, like negligence, is for the jury where its determination depends on a state of facts from which different minds might reasonably draw different inferences or conclusions, but where the facts are undisputed and where only a single inference or conclusion can be drawn therefrom, proximate cause is a matter of law to be determined by the court. In general, questions of proximate cause are for the court only in plain and undisputable cases, and if there is any reasonable doubt as to proximate cause, it is a question of fact to be determined by the jury. *Baltimore & Ohio R. Co.* v. *Patrick, Admtrx.* (1960), 131 Ind. App. 105, 117, 166 N. E. 2d 654 (Transfer denied); *Kempf* v. *Himsel* (1951), 121 Ind. App. 488, 497, 98 N. E. 2d 200 (Transfer denied). 21 Ind. Law Encyc., Negligence, § 204, pp. 428-429.

In accordance with the general rule, it is for the jury to determine whether or not the injurious consequences that result from the negligence are such as ought reasonably to have been foreseen, and whether an intervening cause was such as to break the causal connection between defendant's act and the injury. *Anti-Mite Engineering Co.* v. *Peerman* (1943), 113 Ind. App. 280, 286, 46 N. E. 2d 262 (Transfer denied); *McIntosh* v. *Pennsylvania R. Co.,*

*supra* (1942), 111 Ind. App. 550, 559, 38 N. E. 2d 263; *Tabor* v. *Continental Baking Company* (1942), 110 Ind. App. 633, 644, 38 N. E. 2d 257 (Transfer denied). 21 Ind. Law Encyc., Negligence, § 204, p. 430.

We do not weigh the evidence and substitute our judgment for that of the trial court or jury. Further, if there is evidence or reasonable inferences to support the verdict of the jury, we do not reverse on an assignment of the appellant that the verdict is contrary to law unless the appellant affirmatively shows that reasonable men could not have arrived at the same verdict or judgment. *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 532, 104 N. E. 2d 669; *Sheets* v. *Garringer* (1963), 135 Ind. App. 488, 194 N. E. 2d 757, 759 (Transfer denied).

The evidence in this case is conflicting in many respects— whether or not the train sounded the signals required by statute; whether appellee's automobile struck appellant's train, or was struck by the train; how far south of the crossing the automobile was when the driver first became aware of the approach of the train; and if there were any boxcars standing on the side track extending west of the west end of the grain elevator office and, if so, how many. Evidence of the speed of appellant's train ranged from an estimate of 35-40 miles per hour to 45-50 miles per hour. The jury further heard the testimony of the fireman on appellant's train that it started to rain and sleet as they left South Bend; that he noticed the highways and roads were slippery all the way from South Bend to Tefft; and that he drove a car and knew that it was hard to stop an automobile on ice.

A review of the evidence and reasonable inferences which might be drawn therefrom, and considering all of the attending circumstances in this case, we are of the opinion that we cannot say as a matter of law that reasonable men could only have arrived at a conclusion different from that reached by the jury.

For this court to hold as a matter of law that the finding of the jury, by its general verdict, that appellant was negligent and that its negligence was the proximate cause of appellee's injuries, was not possible under the evidence in this case, would, in our opinion, be tantamount to holding that at an obstructed crossing, with snow, rain and sleet falling and the road surface covered with ice and snow, and such latter condition known to the train crew, and where other facts are in conflict, the negligence of the train crew could not possibly be the proximate cause of a collision and resulting injuries to a passenger in an automobile struck at said crossing, *only because ice was on the highway.*

We, therefore, conclude that the questions of appellant's negligence, proximate cause, intervening cause, foreseeability, and the use of reasonable care by appellee and the driver of the automobile, were not questions for the determination of the court as matters of law, and that the trial court did not err in submitting these issues to the jury for their determination. We are further of the opinion that the evidence supports the general verdict of the jury.

Appellant's specification 4 contends error by the court's refusal to give its tendered Instructions Numbered 2, 3, 5 and 6. By tendered Instructions Numbered 2, 3 and 6 appellant requested the court to instruct the jury that the only charge of negligence to be considered by them, under the complaint and the evidence, was the failure of the defendant-appellant to blow the whistle required by statute.

Plaintiff-appellee's complaint contains only the general allegation "[t]hat the collision aforesaid and the injuries to the plaintiff [appellee] hereinafter set out were due directly and proximately to the negligence of the defendant [appellant]." Appellant did not move to make this allegation more specific.

Under the general allegation of negligence plaintiff could prove any act of negligence, whether based upon statutory

or common law. *The Evansville and Terre Haute Railroad Co.* v. *Krapf, Admr.* (1896), 143 Ind. 647, 655-656, 36 N. E. 901.

Considering the pleading and evidence and keeping in mind all of the surrounding circumstances leading up to this collision, we are of the opinion that it was not reversible error to refuse these requested instructions.

Appellant's tendered Instruction No. 5 requested the court to instruct the jury "that, under all of the evidence, it cannot be said that the railroad train was being operated at an unreasonabe rate of speed. Speed of and in itself never constitutes negligence." Without dwelling upon this instruction it is sufficient to say that even the resume of the evidence set out in this opinion, limited as it is, adequately illustrates the inapplicability of this instruction to the facts of this case. The circumstances surrounding this collision certainly, in our opinion, would not justify the giving of such an instruction.

Appellant's specifications 9 and 10 assign as error the trial court's refusal to sustain its motion to set aside the submission and discharge the jury for misconduct of plaintiff-appellee's counsel in referring to certain matters not in evidence during the examination of plaintiff-appellee. Appellant in the argument section of its brief first sets out the remarks of counsel, the admonishment of the court to the jury at defendant-appellant's request, and appellant's motion to withdraw submission and the trial court's denial thereof. Appellant then flatly states that such remarks were prejudicial and cites as authority *The School Town of Rochester* v. *Shaw* (1885), 100 Ind. 268. The *Shaw* case, the sole authority cited by appellant, involved facts of alleged misconduct which differ greatly from the facts here involved. It also involved the continuation by counsel of his remarks after being reprimanded by the trial judge and the admonition to the jury. Our Supreme Court in the *Shaw* case, at page 273 of 100 Ind., said,

"In this case the court placed no check or barrier to the attorney's continuing and repeating the misconduct."

We have some misgivings as to whether the error, if any, has been properly certified and presented to this court, and and also whether appellant has waived a review of the merits of this assigned error by failing to comply with that part of Rule 2-17 (e) of the Rules of the Supreme Court requiring that "[a]fter each assignment of error relied upon— . . . there shall be concisely stated the basis of the objection to the ruling complained of, exhibiting clearly the points of fact and of law being presented."

Even if appellant had sufficiently presented the assigned error, however, we are of the opinion that the circumstances are such that any alleged error in the trial court's ruling does not constitute reversible error.

Appellant contends here, and did so contend at the hearing on its motion to withdraw submission, that the trial court's admonition to the jury, namely: "All Right. The motion is sustained and the jury so instructed to disregard it," was not broad enough to cure the alleged prejudice of counsel's remarks. Appellant fails to include in its brief on this issue important remarks that took place by its attorney after its motion to withdraw submission was overruled. An examination of the record reveals the following colloquy.

"THE COURT:

\* \* \* \* \*

"Now when the jury comes in here is what I have in mind to tell the jury—

\* \* \* \* \*

"MR. CRUMPACKER. [Counsel for appellant.]

\* \* \* \* \*

"Now the only thing I say is that when the jury went out they went out purely for the purpose of my making a motion to discharge the jury. Your Honor has overruled it. Now if Your Honor makes further comments or state-

ments, why then I am obliged to go into the subject all over again to preserve my record.

\* \* \* \* \*

"I say that the only point that I am making is that I don't think that the Court should give any further instruction to the jury in light of these happenings.

\* \* \* \* \*

"THE COURT:

"Well, possibly you are right. I might make things worse than they are. I don't know.

"MR. CRUMPACKER:

"That's my feeling.

"THE COURT:

"Until you interrupted me, I intended to instruct the jury to disregard Mr. Reed insofar as the Public Service Commission and the people getting killed, and also I was going to explain to the jury that this privilege that his man has is prefectly valid, legal and there is nothing wrong with it, and just the fact that he doesn't waive it, there is nothing wrong with that. He is entitled to hold his privilege if he wants to.

\* \* \* \* \*

"MR. CRUMPACKER:

\* \* \* \* \*

"I want to say this:

"From our standpoint, I do not believe that any further remarks should be made on the subject. In other words, Mr. Reed having dealt what he thinks is a serious prejudicial blow by his remarks outside of the record now wants to muddy up the record to prevent rights of review which we want to preserve.

\* \* \* \* \*

"I say that if Your Honor has ruled that the only point I am getting at is that I don't want to review it but I don't believe that it would be correct to make any further comments. Then I would have to make a further motion."

It is obvious from the above remarks that the court, pursuant to appellant's request, admonished the jury; that appel-

lant did not consider such admonition broad enough to cure the alleged prejudice of such remarks and moved for a mistrial; that such motion was denied by the trial court; that the trial court expressed intentions to correct any insufficiency in its admonition to which proposed action appellant objected, *not once, but three times.*

> "In order for a court of appeal to determine whether such misconduct could not be cured in the course of the trial by an admonishment of the court to the jury, it is necessary for the facts and reasons thereof to be set forth in the lower court and *that the lower court be given an opportunity to cure the harm* and the reviewing court have the opportunity to pass upon the action of the trial court based upon the particular circumstances before the trial court. Any other rule would take from the trial judge the necessary authority to correct errors which are possible of correction in the court below, and might result in endless litigation." (Emphasis supplied.) *Lawson* v. *Cole* (1953), 124 Ind. App. 89, 93-94, 115 N. E. 2d 134.

We need not decide the issue of whether the remarks complained of are incurable by any admonishment, for in our opinion appellant's argument in its brief on this issue consists of mere conclusions of the author without adequate authority or application. It further lacks any showing in what manner the alleged error was prejudicial.

Under Rule 2-17 (e), *supra,* appellant, on appeal, must show harmful error by cogent argument and citation of authorities. *Wright* v. *State* (1958), 237 Ind. 593, 595, 147 N. E. 2d 551; *Chadwick et al.* v. *Baughman et al.* (1963), 134 Ind. App. 305, 311, 187 N. E. 2d 588.

Further, we are not required to search the record in order to reverse. *Farm and Home Insurance Company* v. *Konradi, supra* (1964), 136 Ind. App. 356, 199 N. E. 2d 726, 729.

If the admonition given by the trial court was insufficient it is apparent that any attempt to correct it by the trial court was, if not directly prevented by appellant's attorney, at least

by his strenuous and continuous objections, error, if any, by the court in failing to make the admonition more specific was invited, and possiby insisted upon, by counsel for appellant. A careful review of the record on this issue readily shows that the remarks complained of were not an isolated instance but involved many remarks exchanged between counsel for appellant and appellee.

It is our considered opinion, after a thorough review of the record on this issue, that appellant has not shown this court that this assigned error is such as to be reversible error. We cannot say, considering all the circumstances surrounding this issue, that the trial court abused its discretion. Counsel cannot invite error by the trial court and later complain of such action on appeal. *Armstrong* v. *Presslor* (1947), 225 Ind. 291, 295, 73 N. E. 2d 751; *Gray* v. *Gray* (1931), 202 Ind. 485, 492, 176 N. E. 105; *Moran* v. *Miller, State Fire Marshal* (1926), 198 Ind. 429, 439, 440, 153 N. E. 890.

A review of the record before us readily shows that this cause was strongly presented and defended and some parts of the trial became quite stormy. However, we are of the opinion that, considering the record in its entirety, the cause was fairly tried, justice was accomplished and appellant has failed to demonstrate any reversible error, and that the judgment of the trial court should, therefore, be affirmed.

Judgment affirmed.

Carson, Mote and Smith, JJ. concur.* Bierly, C. J. concurs in result. Prime, P. J., Hunter and Wickens, JJ. not participating.

NOTE.—Reported in 211 N. E. 2d 502.

---

* While Judge Martin participated in the hearing of oral argument and a conference of the judges, his untimely death occurred before the adoption of this opinion.