WILLIAM J. SHERIDAN *v*. ALFRED J. SIUDA ET AL.

[No. 870A132. Filed December 27, 1971. Rehearing denied January 27, 1972. Transfer denied May 10, 1972.]

*Roland Obenchain,* of South Bend, for appellant.

*Arthur Allan Keppen,* of Michigan City, *Jack Murray,* of Knox, for appellees.

BUCHANAN, J.—*STATEMENT OF THE CASE AND FACTS*—This is an appeal from a negative verdict rendered against plaintiff-appellant William J. Sheridan (Sheridan) in an action against defendants-appellees Alfred J. and Edward L. Siuda (Siuda) for the death of his daughter, a non sui

juris minor, pursuant to IC 1971, 34-1-1-8, Ind. Ann. Stat. § 2-217 (Burns 1967).

The complaint was originally filed in LaPorte County and was later venued to the Starke Circuit Court. The cause was tried by a jury, which returned a verdict for the defendants.

These are the facts most favorable to Siuda:

On August 22, 1966, Lake Shore Drive and Hazeltine were paved public thoroughfares which intersected at right angles in the Town of Long Beach, Indiana. At 7:30 P.M., as the sun was setting in the west, Siuda was operating a large Ford truck to which was attached a low-boy trailer carrying a Caterpillar tractor. He was proceeding west on Lake Shore Drive through the Hazeltine intersection. It was a clear day and the streets were dry. There were signs at regular intervals on Lake Shore Drive warning motorists that children were at play everywhere. The streets themselves were narrow and congested, and there was no sidewalk provided for pedestrians either along Lake Shore Drive or Hazeltine Drive.

The truck was driven by Alfred J. Siuda, and as he approached the intersection he looked to his left and noticed a child in a stroller careening down the hill towards the truck. Siuda turned the truck sharply to the right in order to avoid the child; however, he was unsuccessful in this attempt and the child, Mary Florence Sheridan, age 6, struck the trailer and subsequently died.

At the time of the accident, the deceased child had been left by her parents in the custody of her 18-year-old brother, William, Jr., who was walking on the beach when the child was injured.

An examination of the scene indicated no brake marks made by the truck; however, further examination showed sand on the road and under these circumstances tire marks might not be visible on the road.

It is undisputed that the speed limit along Lake Shore Drive was twenty-five miles an hour, and it is further un-

disputed that Siuda was traveling at a rate between twenty and twenty-five miles an hour.

The evidence indicates that Hazeltine Drive is lined with a hedge and two columns at the end of the street where it intersects Lake Shore Drive. This condition made observance of traffic coming off of Hazeltine onto Lake Shore difficult.

During the course of the trial, Sheridan offered into evidence, without objection, Exhibit 11, which consisted of an ordinance of the Town of Long Beach, together with proof of publication.

The ordinance reads in part as follows:

"Be it Ordained, by the Board of Trustees of the Town of Long Beach, Indiana, that it shall be unlawful . . . to . . . drive . . . any . . . vehicle . . ., the gross weight of which, . . . is in excess of four and one-half tons, on . . . Lake Shore Drive."

Sheridan requested his instruction No. 8, which the Court refused. It consisted of the ordinance relating to gross weight of vehicles and added this paragraph:

"If you find from a preponderance of the evidence that the defendants violated the ordinance on the occasion in question and that the violation was without excuse or justification such conduct would constitute negligence on the part of the defendants."

Siuda's vehicle weighed more than four and one-half tons.

Prior to giving instructions, Sheridan moved to withdraw the issue of contributory negligence from consideration by the jury. The trial court overruled this motion.

During the final argument Siuda's attorney read to the jury an article entitled, "Who Is Responsible?" which appeared in the local newspaper, The Long Beacher. This bit of journalism sounded a warning note to parents, placing responsibility on them for endangering their children by allowing them to use the streets as a playground. Such phrases were used as, "The new game of Russian Roulette played by youngsters", "streets

are used as playgrounds", "Streets in Long Beach are for automobiles . . . not playgrounds" and "Taking turns riding down hills across the line of traffic is a popular pastime".

After most of the article had been read to the jury, the attorneys for Sheridan objected. The court's reply was as follows: "I think I'll take the position you may not read it, but you can go on with argument."

Counsel for Sheridan then moved for an order instructing the jury to entirely disregard the reading of the excerpts from The Long Beacher or in the alternative to withdraw submission of the cause and declare a mistrial, and gave reasons for the motion.

The court replied: "Overruled on the grounds it's within proper argument."

At the close of final arguments, and prior to the reading of the instructions, the court made the following statement:

> "Ladies and gentlemen, there have been objections by counsel on both sides during the final argument. You should not hold this against either side. Also, the things said by lawyers during the final arguments are not to be considered as evidence by you." (Even though both sides allude to this quotation by the court, it is not to be found in the Record.)

Over objection, the Court gave final instruction No. 7, as follows:

> "The negligence, if any, of the 18-year-old son William Sheridan, is chargeable to the parents and if such negligence proximately contributed to the injury and death, then in that event there can be no recovery against the defendants."

Sheridan objected to final instruction No. 11, as follows:

> "If the defendant, Alfred Siuda, was placed in a position of great peril and sudden emergency thru no fault of his own, where immediate action is necessary, and where de-

fendant was compelled to make a choice between hazards, he is not required to exercise all of the presence of mind and carefulness that are justly required of a careful and prudent man under ordinary circumstances, who has time to deliberate; and the reasonableness of his effort to avoid harm to the deceased after discovery of the danger, is a question for the jury to determine under all the circumstances of the case."

Also, objected to by Sheridan was final instruction No. 12:

"I instruct you that the happening of an accident even though accompanied by proof that plaintiff's decedent was a non sui juris minor does not raise a presumption of negligence on the part of the defendant. Negligence on the part of the defendant must be established before there can be a recovery by the plaintiff and such negligence as is charged in the complaint, must be established by the preponderance of the evidence before there can be a recovery. If there is a failure of proof in this regard, your verdict should be for the defendant."

*ISSUES*—Sheridan's Motion to Correct Errors raises five issues:

*Issue One.*

Was Sheridan denied a fair trial because of improper final argument and the failure of the trial court to specifically admonish the jury with respect thereto or declare a mistrial?

*Issue Two.* Was it error to refuse Sheridan's instruction No. 8, which informed the jury of the effect of a violation of the town ordinance concerning overweight vehicles, which ordinance had been admitted into evidence without objection?

*Issue Three.* Was there sufficient evidence of contributory negligence on the part of Sheridan's eighteen-year-old son to support final instruction No. 7, which imputed his negligence to the parent as a matter of law?

*Issue Four.* Does final instruction No. 11, wrongfully instruct the jury that Siuda had no duty towards Mary Sheridan until such time as great peril and sudden emergency arose?

*Issue Five.* Does final instruction No. 12 violate the meaning, theory, and intent of the Indiana Rules of Procedure?

As to *Issue One,* Sheridan asserts that the introduction of the newspaper article during final argument by Siuda's counsel was prejudicial and inflammatory and constituted misconduct of counsel. Following his timely objection to the reading of the newspaper article, the trial court should have specifically instructed the jury to disregard any statements concerning the article or declare a mistrial.

In this connection Siuda contends that the trial court did instruct the jury, following final argument, that "things said by lawyers during the final arguments are not to be considered as evidence by you" and this statement was adequate to cover any error committed during final argument. Even if not adequate, Sheridan waived any rights he may have had to object by delaying his objection until the article was almost completely read.

As to *Issue Two,* it is Sheridan's contention that the refusal to give his instruction No. 8 was error as the ordinance was admitted into evidence without objection and the facts clearly indicated that Siuda had violated the ordinance because the truck and trailer exceeded the weight limit. It is this violation, Sheridan argues, which bore directly upon Siuda's duties with respect to look-out, control and speed, particularly "in view of the congested nature of the area." The implication is the violation of this ordinance was the proximate cause of the injury.

Siuda argues, however, that the court properly refused this instruction, as any purported violation of the ordinance

was not shown by the evidence to have been the proximate cause of the death of Sheridan's daughter.

As to *Issue Three,* Sheridan argues that final instruction No. 7, should not have been given because (1) there was no evidence of negligence on the part of William, Jr.; (2) there was no proof of agency or joint enterprise; (3) nothing other than family service gratuitously rendered by William, Jr. was shown.

As to *Issue Four,* Sheridan finds fault with final instruction No. 11, because it confused and prejudiced the jury by conveying the impression that the defendants had no duty toward the decedent until such time as great peril and sudden emergency arose. Under the law of the State of Indiana, it was Siuda's duty under the circumstances existing at the time to be constantly attentive and keep a careful lookout for the presence of children occupying the public highway.

Siuda's position is that the doctrine of sudden emergency does apply to non sui juris minors, and that it is a valid defense in all cases involving an emergency not the fault of the parties seeking to set up such a defense.

As to *Issue Five,* Sheridan objects to final instruction No. 12, on the ground it limits the jury's determination of the issues of negligence, proximate cause, and damages strictly to the Complaint and does not allow the jury to consider *all* of the evidence introduced.

Siuda contends this argument is without merit because the instant case was submitted to the jury upon all legally relevant, competent and material evidence that was introduced during the trial.

*DECISION—Issue One.* It is our opinion that Sheridan was not denied a fair trial because of improper final argument and the failure of the trial court to specifically admonish the jury or declare a mistrial.

The content of the article, "Who Is Responsible?", intro-

duced into final argument by Siuda's attorney, was on its face prejudicial and it is improper argument to argue matters not in evidence or within the issues. *Jackson v. Beard* (1970), 146 Ind. App. 382, 255 N. E. 2d 837. Among other things, this objectionable article referred to the reckless actions of children in such a way as to lead a jury to believe that contributory negligence on the part of a six-year-old child would defeat the father's cause of action for her death. The law of this state is clearly to the contrary. See *J. F. Darmody Co. v. Reed* (1916), 60 Ind. App. 662, 111 N. E. 317.

Objection was made by opposing counsel to the reading of this article before all of it was read. This would seem to be timely, although Siuda maintains that Sheridan's counsel waived his client's rights by not objecting sooner. While events often move swiftly in the microcosm of the court room, instantaneous reaction is not necessarily required. Counsel only need be nimble to the extent that his objection be in time to allow the alleged error to be corrected. I.L.E. *Appeals* § 92, *Barton v. State* (1959), 240 Ind. 257, 163 N. E. 2d 600. Such agility was demonstrated here.

Moreover, the objection was specific and followed the correct procedure by requesting that the court take action to stop the improper argument and correct the error. Sheridan's request that the jury be specifically instructed to disregard improper remarks of counsel or that a mistrial be declared was overruled. Instead the court later made a general statement at the close of the argument that "the things said by lawyers during the final arguments" are not evidence.

In our opinion the court should have at least admonished the jury at the time objection was made to disregard the improper remarks of counsel in quoting from the objectionable article. *Cleveland etc. R. Co. v. Simpson* (1914), 182 Ind. 693, 104 N. E. 2d 301; *Johnson v. Brown* (1891), 130 Ind. 534, 28 N. E. 698.

Apparently the court was of the opinion that these remarks were not sufficiently prejudicial to warrant a mistrial. This court said in *Meeker, Guardian* v. *Decker* (1937), 104 Ind. App. 594, 10 N. E. 2d 416, that:

"We do not approve or condone remarks in arguments before a jury which are not supported by the evidence, but we must recognize the fact that the trial court is in a better position to determine the propriety or impropriety of such remarks, and whether or not they are harmful. The trial court has a wide field of discretion as to such matters."

While the trial court should have specifically instructed the jury to disregard the objectionable article, the failure to do so is harmless error. This is true not only because the trial court has considerable latitude in determining what is improper or harmful argument, but because appellate courts will not interfere with the final result of the trial unless from the entire record it appears that the misconduct of counsel in making improper argument is probably the means of securing a wrong verdict. *Snow* v. *Cannelton Sewer Pipe Co. et al.* (1965), 138 Ind. App. 119, 210 N. E. 2d 118, *Indiana Pipe Line Company* v. *Christianson* (1924), 195 Ind. 106, 143 N. E. 596, *Rose* v. *Rose* (1896), 145 Ind. 162, 44 N. E. 1. We cannot say as a matter of law that the wrong verdict was reached in this case.

*Issue Two.* The trial court did not commit error in refusing to give Sheridan's instruction No. 8, to the effect that violation of the town ordinance prohibiting overweight vehicles constituted negligence.

Sheridan's argument is that violation of this ordinance was negligence per se and as it was admitted into evidence without objection the court should have given the instruction. We cannot agree. Violation of a statute or ordinance may be negligence per se, but such violation may not be the proximate cause of plaintiff's injury.

As our Supreme Court said in *New York Central Railroad Company* v. *Glad* (1961), 242 Ind. 450, 179 N. E. 2d 571:

"It is also the general rule that 'a violation of a statute enacted *for reasons of safety* is negligence per se or negligence as a matter of law' . . . Negligence per se or as a matter of law does not necessarily mean *liability* per se. *Northern Indiana Transit, Inc.* v. *Burk* (1950), 228 Ind. 162, 89 N. E. 2d 905, 17 A.L.R. 2d 572." (Emphasis supplied.)

An examination of the full text of the ordinance in question as it appears in the record leads us to the inescapable conclusion that it was enacted to protect the city streets and highways of Long Beach, Indiana, from overweight vehicles. It was not enacted for safety reasons.

In determining whether there has been a violation of a statute or ordinance so as to constitute negligence consideration must be given to the purpose of the enactment, the persons whom it was intended to protect, and the injuries which it was intended to prevent. If all these factors are not present the *violation* does not amount to negligence. (See 65 C.J.S. *Negligence* § 19(5).) The violation of this ordinance fails to meet the initial test of "purpose" and therefore the trial court was correct in excluding it.

*Issue Three.* It is our opinion that final instruction No. 7, concerning the contributory negligence of Sheridan's eighteen-year-old son was proper.

It is Sheridan's contention that insufficient evidence existed for an instruction as to contributory negligence, and even if there was sufficient evidence the negligence of the son could not be imputed to the parents.

When the evidence is such that reasonable men could fairly draw different inferences from undisputed facts, the question of contributory negligence is one of the facts for the jury to determine. *Rocoff* v. *Lancella* (1969), 145 Ind. App. 440, 251 N. E. 2d 582, *National Dairy Products Corp.* v. *Grant* (1968), 143 Ind. App. 464, 241 N. E. 2d 275.

Mary Sheridan, a child of tender years, was left by Sheridan in the care and custody of the eldest of the Sheridan children.

It thus became the lot of William, Jr., to supervise his young sister. When the accident occurred he was absent, having gone for a walk down the beach apparently leaving Mary unattended. In this state of affairs, the jury could as reasonably as not found William, Jr., to be contributorily negligent. (See *Metz* v. *Madison* (1971), 149 Ind. App. 157, 271 N. E. 2d 197.)

Whether or not the negligence of a custodian may be imputed to the parent of a child seeking damages for death of a minor under § 2-217 *supra,* is a novel question in Indiana. A review of the cases treating imputed negligence leads us to the conclusion that the negligence of a custodian may sometimes be imputed to the parent to bar recovery in an action under § 2-217 *supra.*

In *Gillion* v. *J. C. Penney Co.* (1965), 341 F. 2d 457, the Seventh Circuit Court of Appeals after considering several Indiana cases, concluded that:

> "It might be argued that in the instant case, the cause of action is given by statute to the father, but that any contributory negligence was by the mother. However, it seems likely from the language used by the court in the Stoddard case, supra [1894, 10 Ind. App. 278, 37 N. E. 723] had the mother been found guilty of contributory negligence, the father would have been denied recovery. Also, in the Fleming case, supra, [1915, 183 Ind. 511, 109 N. E. 753] we may infer from the court's language that *contributory negligence on the part of* either parent, the grandfather or *the youth in custody* [custodian] would have been sufficient to bar the father's right of recovery." (Emphasis supplied.)

The court in *Gillion, supra,* cited 67 C.J.S. *Parent and Child* § 46, which more fully expresses the rule this way:

> "Contributory negligence on the part of the parent ordinarily will preclude a recovery by him for injury to the child. *Similarly, contributory negligence on the part of the custodian of the child, where imputed to the parent in accordance with the rules discussed in Negligence § 163 will bar recovery by the parent.* (Emphasis supplied.)

". . . It is the duty of a parent or other person having the care, custody, and control of a child to exercise ordinary care for its safety, and, where failure to do so contributes proximately with the negligence of third persons to cause injury to the child, such parent, *or other custodian,* is guilty of contributory negligence . . ." (Emphasis supplied.)

Thus, where a child sustains injury as a result of the concurrent negligence of a third person and one in whose charge he has been placed by a parent, the negligence of the custodian may be imputed to the parent. (See *Lorts* v. *McDonald* (1958), 17 Ill. App. 2d 278, 149 N. E. 2d 768.)

Sheridan argues that *Union Traction Company of Indiana* v. *Gaunt* (1922), 193 Ind. 109, 135 N. E. 846, prohibits imputing the negligence of the custodian to the parent and bases his argument upon the following quote from that case:

"To impute the negligence of one person to another, the relation between them must be one invoking the principles of agency; or the parties must be cooperating in a common or joint enterprise; or the relation between the parties must have been such that the person to whom the negligency is imputed must have had the legal right to control the action of the person actually negligent."

All this case holds is that in order to impute negligence to the parent he or she must have the right to control or regulate the agency or person whose negligence is to be imputed. A father sued the Union Traction Company of Indiana for the death of his daughter because one of its interurban trains had struck a school wagon carrying the daughter and other school children. The court refused to impute any negligence on the part of the driver of the wagon to the father inasmuch as he had no control over the driver of the school wagon.

The facts before us indicate that at the time of the accident Sheridan had every legal and equitable right to control the

actions of William, Jr. Therefore, negligence on the part of the son as custodian could be imputed to the father.

*Issue Four.* It is our opinion that final instruction No. 11, instructing the jury as to the doctrine of sudden emergency or peril, was proper and applicable to the evidence.

It is Sheridan's contention that this instruction confused the jury and was prejudicial in that it tends to convey the impression that the defendants had no duty toward the decedent until such time as great peril or sudden emergency arose.

It is error for the trial court to give an instruction which is not pertinent to the issues and applicable to the evidence. *Baker* v. *Mason* (1968), 142 Ind. 314, 242, N. E. 2d 513, *Wiley* v. *Myers* (1958), 238 Ind. 385, 150 N. E. 2d 887. In commenting upon the applicability of giving an instruction based upon the doctrine of sudden peril [also called Doctrine of Sudden Emergency] this court in *Dimmick* v. *Follis* (1953), 123 Ind. App. 701, 111 N. E. 2d 486, held as follows:

> "The yardstick for measuring the quantum of care exercised by one confronted by sudden peril can be used only in connection with what he does or fails to do after discovering the danger in which he has been suddenly subjected. The whole doctrine of sudden peril has to do with the judgment one exercises in an emergency, and if one is unaware of such emergency and exercises no judgment, there is no room for the application of the doctrine."

The evidence indicates that Siuda was aware of an emergency situation when he first saw little Mary emerge from behind the hedge and pillar in the fast moving stroller. Under these circumstances, it was appropriate that final instruction No. 11, be given covering a sudden emergency situation and the standard of care under those circumstances.

Sheridan cites *Baker* v. *Mason, supra,* to the effect that an instruction is prejudicial if the evidence indicates a party's

own conduct created the emergency which confronted him. There is no evidence in the record indicating that Siuda was in any way involved in creating the emergency which confronted him.

> *Issue Five.* It is our opinion that the giving of final instruction No. 12, limiting evidence of negligence to the complaint did not constitute reversible error.

Sheridan objects to the giving of this instruction on the basis that it violates the meaning, theory and intent behind the "new" Indiana Rules of Procedure. The objectionable part of the instruction is:

> "Negligence on the part of the defendant must be established before there can be a recovery by the plaintiff and *such negligence as is charged in the complaint* must be established by the preponderance of the evidence before there can be a recovery . . ."

Siuda contends that the instruction should have allowed the jury to consider the issues as they arose from the evidence rather than what was plead in the complaint.

Siuda is technically correct. However, TR. 15(B) reads in part:

> "When issues not raised by the pleadings are tried by express or implied consent of the parties they shall be treated in all respects as if they had been raised by the pleadings. Such amendment of the pleadings may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure to so amend does not affect the result of the trial of these issues."

Sheridan argues that because the instruction was incorrectly given, the jury was precluded from considering the violation of the overweight ordinance (discussed at Issue Two) which was not included in Sheridan's pleadings. As indicated earlier, the violation of this ordinance in no way bears upon whether or not Siuda was negligent. Giving this instruction could not, therefore, be prejudicial to Sheridan.

At most it amounts to harmless error and is not grounds for reversal. See Rule TR. 61.

Affirmed.

Sullivan, P. J., Lowdermilk and Robertson, JJ., concur.

NOTE.—Reported in 276 N. E. 2d 883.