[No. 1799-3.   Division Three.   May 16, 1977.]

WILLIE MAE NESMITH, *Appellant,* v. JESS A.
BOWDEN, ET AL, *Respondents.*

*Warren L. Dewar, Jr.,* and *Velikanje, Moore & Shore,* for appellant.

*Alan A. McDonald* and *Halverson, Applegate, McDonald, Bond, Grahn, Wiehl & Almon,* for respondents.

GREEN, J.—This is an appeal from a judgment of dismissal entered at the close of plaintiff's evidence in an action for wrongful death. The primary issue presented is whether plaintiff established a prima facie case to require submission to the jury. We answer in the affirmative and reverse.

Plaintiff presented the following evidence. About 7 a.m. on October 4, 1974, Howard NeSmith, Sr., was struck and killed by a freightliner tractor–trailer owned by the defendant, Eastern Washington Distributing Co., Inc., and driven by Jess Bowden, another defendant. The accident occurred a short distance south of Union Gap, Washington.

Howard NeSmith, Jr., decedent's 19–year–old son, testified that on the morning of the accident he was driving a 1965 Falcon in a westerly direction on Second Street and approached an intersection with state Highway 97, a 4–lane highway situated in a general north–south direction. The other occupants in the vehicle were Mr. NeSmith, the decedent, in the front seat, and John NeSmith, another son, in the back seat. Howard, Jr., testified that he stopped at the intersection, looked to his left (south), and observed two cars proceeding north followed by defendant's tractor–trailer. After waiting for the two cars to pass, he proceeded across the intersection. At that time, the tractor–trailer was about one–quarter mile away. As he crossed the first northbound lane, the car engine died and the car coasted to a stop, the front partially in the storage lane and the rear partially in the second northbound lane of Highway 97. Mr.

NeSmith got out of the car and told the two boys to "sit there." Just after his father got out, Howard, Jr., looked to his left (south) and saw the tractor-trailer "80 or 90 feet" away while his father was standing at the rear of the car. Howard, Jr., testified:

Q. Well, did you think it was going to scrape your car?
A. Yes—sure did.
Q. Why, Because it was in your lane?
A. No, because he was coming so fast and was so big, like he'd taken both lanes.
Q. As a matter of fact, you could see, he was coming right straight at you. He was not in your lane at all, was he?
A. He was just coming.

At that time, he estimated the truck's speed at 55 miles per hour, and stated that in 2 or 3 seconds it passed within 2 feet of the rear of the car. When he looked again, he saw his father lying on the shoulder of the road. The record shows that the decedent was struck by the front right corner of the tractor-trailer.

John NeSmith, age 15, testified that on the morning of the accident, he was dozing in the back seat and was awakened when the car stalled. He stated that the first thing he remembered was looking around to his right and then to his left, where he saw the tractor-trailer pass by the rear of the car and estimated its speed "about 50, 55." He then saw his father lying on the ground.

Portions of Jess Bowden's deposition were read into the record by plaintiff's counsel. Bowden stated that when he was approximately 200 feet south of the Second Street intersection, he observed a car at the stop sign and saw it move onto the highway and stop. He then slowed down and moved into the left (west) northbound lane. When he was about 75 feet from the car, he observed the car being pushed into his lane and he then turned into the right (east) northbound lane to pass by the rear of the car. Both Howard, Jr., and John NeSmith denied that anyone attempted to push their car. Bowden stated that after he returned to the right lane, Mr. NeSmith ran across that

lane and was struck by the tractor–trailer. Mr. Bowden estimated that he began slowing down when he was approximately 175 feet from the car, was traveling about 50–55 miles per hour when he first applied his brakes, and was then traveling about 25 miles per hour at the time he passed the rear of the car. Plaintiff's counsel then called Mr. Bowden as an adverse witness, who confirmed the deposition testimony, and further stated that he did not remember signaling to indicate the lane changes.

Trooper Jule Cortez testified that he was notified of the accident at 6:55 a.m. and arrived at the scene at 7:02 a.m. He stated that the speed limit for trucks in that area is 55 miles per hour. Upon arrival, he observed the decedent lying along the shoulder of the highway a few feet north of the Second Street intersection. The tractor–trailer was parked on the shoulder 150 to 200 feet north of the body. The trooper found no debris or other matter on the highway to indicate where the accident occurred, and while there were some skid marks in the vicinity, he could not identify them as having been made by the tractor–trailer. He determined that the 65–foot tractor–trailer was loaded with cargo and weighed about 70,000 pounds. He had no record that Mr. Bowden stated he had switched lanes immediately prior to the accident; but his notes did reveal that Mr. Bowden told him he was traveling about 50 miles per hour when he observed some people pushing a stalled car on the highway; and as he approached saw one of them run across the lane in front of his truck and he attempted to swerve to miss him.

Cedric Clark, one of the owners of defendant, Eastern Washington Distributing Co., Inc., testified that a tractor–trailer driven in twelfth gear, as the one in this case, would be traveling between 45 and 60 miles per hour.

Preston L. Shepherd, a civil engineer, testified that a truck weighing approximately 76,000 pounds traveling on a street–level highway at 50 miles per hour could stop in 327 feet; and the same truck traveling at 25 miles per hour could stop within a distance of approximately 56 feet.

Based upon the foregoing evidence, the trial court granted defendant's motion to dismiss upon the grounds that the plaintiff had not established a prima facie case of negligence. Plaintiff argues that the evidence presented was sufficient to create a jury question of negligence and proximate cause. We agree.

A challenge to the sufficiency of the evidence admits the truth of plaintiff's evidence and all reasonable inferences therefrom; and where justifiable inferences upon which reasonable minds could differ are present, the issues are for the jury. *Rikstad v. Holmberg*, 76 Wn.2d 265, 456 P.2d 355 (1969). Here, viewing the evidence in such a manner reveals that defendant Bowden saw the NeSmith vehicle initially from a distance of 200 feet, switched lanes at 175 feet and again at 75 feet, was traveling approximately 50 to 55 miles per hour, and did not signal his lane changes or sound his horn. From this evidence reasonable minds could differ as to whether defendant Bowden's conduct was that of a reasonably prudent person under the circumstances. Plaintiff's evidence and reasonable inferences therefrom constitute a prima facie case of negligence for breach of the duties imposed by various motor vehicle statutes.[1]

Violation of motor vehicle statutes is negligence per se and prima facie proximate cause as a matter of law. *Zahler v. Dittmer*, 50 Wn.2d 32, 308 P.2d 689 (1957). But, where one must act in an emergency and is justified in leaving his lane of travel to avoid a collision with another vehicle, it is proper to violate a rule of the road if done with reasonable care. *Martin v. Bear*, 167 Wash. 327, 9 P.2d 365 (1932); *Burlie v. Stephens*, 113 Wash. 182, 193 P. 684 (1920). The burden of going forward with evidence of excuse or justification for violating such statutes is upon

---

[1]RCW 46.61.400 (to drive at a reasonable speed to avoid collisions and to drive at a reduced speed when hazards exist); RCW 46.61.245 (to exercise due care to avoid pedestrians, and to sound the horn); RCW 46.61.140 (to not change lanes unless it is safe); RCW 46.61.305 (to signal a lane change and not change lanes until the signal is given for the last 100 feet).

the defendant. *Bowen v. Baumgardner*, 6 Wn. App. 18, 22, 491 P.2d 1301 (1971).

We disagree with defendants who argue that plaintiff's evidence does not support reasonable inferences of negligence but would result in speculation and conjecture by the jury. From a review of the record, jury questions exist as to whether an emergency situation was created given the distance of the tractor–trailer from the NeSmith vehicle, whether Mr. Bowden was justified in violating rules of the road, and whether he acted in a reasonable manner. Based on the evidence presented, the jury could find that Mr. Bowden failed to exercise due care consistent with the circumstances presented in failing to sufficiently reduce his speed or stop. Plaintiff's evidence constitutes a prima facie case sufficient to support a denial of a motion to dismiss[2] and to create jury questions on these matters. Consequently, the court erred in granting the motion to dismiss.

Second, plaintiff argues that the court erred in refusing to admit defendant's log books and bills of lading introduced for the purpose of showing the amount of on–duty and off–duty driving time of defendant Bowden for October 2–4, the period of time immediately prior to the accident. The trial court determined the evidence was immaterial. Plaintiff contends the evidence is admissible to show violation of federal regulations of maximum driving and on–duty time, and argues the violations constitute negligence per se and create a jury question on proximate cause. We agree.

█ Federal regulations promulgated under authority of 49 U.S.C. 304 (1963) set forth maximum driving and on–duty time for drivers of motor carriers. *See* 49 C.F.R. § 395 (1976) *et seq.* These regulations imposing restrictions on

---

[2]We recognize that the presumption that a decedent used due care where there is no evidence to the contrary cannot be used to establish defendant's negligence as proximate cause, and do not rely on this presumption as part of plaintiff's evidence, except to the extent that it serves as evidence until prima facie evidence is adduced by the opposing party. *Gardner v. Seymour*, 27 Wn.2d 802, 180 P.2d 564 (1947).

the number of hours that those engaged in interstate commerce may work in any one workweek are intended to prevent accidents due to fatigue. *Starrett v. Bruce*, 391 F.2d 320 (10th Cir.), *cert. denied,* 393 U.S. 971, 21 L. Ed. 2d 384, 89 S. Ct. 404 (1968); *Walling v. Comet Carriers, Inc.,* 151 F.2d 107 (2d Cir. 1945). These regulations have the force and effect of law. *Tri–State Cas. Ins. Co. v. Loper,* 204 F.2d 557 (10th Cir. 1953); *Interstate Motor Lines, Inc. v. Great Western Ry.,* 161 F.2d 968 (10th Cir. 1947). It is clear that the maximum driving and on–duty time regulations were enacted to maintain safety on the highway and protect the public against accidents with drivers of motor carriers.

■ Our Washington Supreme Court has adhered to the test of Restatement (Second) of Torts § 286 (1965) in determining whether violation of a public regulation must be considered in determining liability:

> The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part
> (a) to protect a class of persons which includes the one whose interest is invaded, and
> (b) to protect the particular interest which is invaded, and
> (c) to protect that interest against the kind of harm which has resulted, and
> (d) to protect that interest against the particular hazard from which the harm results.

*Kness v. Truck Trailer Equip. Co.,* 81 Wn.2d 251, 257, 501 P.2d 285 (1972); *Schneider v. Yakima County,* 65 Wn.2d 352, 397 P.2d 411 (1964); *Currie v. Union Oil Co.,* 49 Wn.2d 898, 307 P.2d 1056 (1957); *Cook v. Seidenverg,* 36 Wn.2d 256, 217 P.2d 799 (1950); *Gardner v. Seymour,* 27 Wn.2d 802, 180 P.2d 564 (1947); *Loveridge v. Schillberg,* 17 Wn. App. 96, 561 P.2d 1107 (1977).

Here, the decedent was a member of the class of persons the regulations were designed to protect, a member of the public using a public highway; and the injury to him was of the type the regulations were designed to protect against. A

prima facie causal connection between the violations and the injury exists, and the evidence is therefore relevant and material to the issues of negligence and proximate cause, questions of fact for the jury. *Kness v. Truck Trailer Equip. Co., supra* at 258. As previously noted, the burden of going forward with evidence of excuse or justification for the violations is upon the defendant. *Bowen v. Baumgardner, supra.* We find that the trial court erred in failing to admit evidence of violation of these regulations by defendant Bowden.

Reversed and remanded.

MUNSON, C.J., and MCINTURFF, J., concur.