**Carol Lynn BRANDES,**
**Plaintiff-Appellant,**

**v.**

**Donald BURBANK and Finer Iron and**
**Metal Company, Inc.,**
**Defendants-Appellees.**

**No. 79–1577.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 27, 1979.

Decided Jan. 14, 1980.

John F. Townsend, Jr., Indianapolis, Ind., for plaintiff-appellant.

Richard L. Fairchild, Indianapolis, Ind., for defendants-appellees.

Before CASTLE, Senior Judge, and PELL and WOOD, Circuit Judges.

PELL, Circuit Judge.

This is an appeal from a judgment in favor of the defendants, Burbank, and his employer, Finer Iron and Metal Company, Inc., following a jury verdict. The only error raised on appeal by the plaintiff Brandes relates to two instructions, one given and one refused.

The facts in this diversity case are essentially not in dispute. At approximately 7 o'clock on the morning of February 14, 1975, Burbank was operating a tractor-trailer unit east on Interstate Highway 70 west of Richmond, Indiana. Getting sleepy, he began to search for a place to stop and rest. He approached a rest stop but found it too crowded to enter. He made some attempts, unsuccessfully, to find a truck stop through his CB radio. He thereafter pulled off the traveled portion of the highway and stopped on a ten-foot wide asphalt emergency strip near the interchange with U.S. Highway 27. The nearest part of his unit was approximately three feet from the traveled portion of the IH 70. At the time of the stop, dawn was imminent. Some vehicles had headlights on while others did not. Burbank left on or turned on his headlights, clearance lights, brake lights, and four-way blinkers or flashers. At about this time, an Indiana State Police officer driving westwardly on IH 70 passed the intersection, saw the truck on the emergency strip with its lights on, and proceeded on to his destination. Burbank did not place any warning devices of any type next to or behind his unit on the asphalt strip on which he was parked.

As frequently is the case there was not complete unanimity on the evidence as to the visibility for people approaching his unit from the West. Burbank went to sleep in the cab of his unit, and at approximately

7:15 a. m. a van being operated east on the interstate highway by the plaintiff's husband struck the rear of the parked tractor-trailer unit. The husband was killed and the plaintiff received paraplegic injuries. There was also evidence that there were numerous locations at the U.S. Highway 27 interchange where a truck could leave the interstate highway and park. Burbank had not gotten out of his truck after he stopped. He had emergency flares "consisting of a flat piece of metal with two round reflector-type reflectors that stand upright with a flag on the top," but he did not place any of these devices to the rear of his vehicle.[1]

### Instruction No. 14

The first claim of prejudicial error was with regard to Instruction No. 14 given by the court. To understand this instruction we must look, however, at two other instructions of the court, Nos. 11 and 12. Both instructions dealt with the subject of negligence per se. No. 11 concerned the potential applicability of the doctrine through an Indiana statute, I.C. 9–4–1–112, the pertinent portion of which, as stated in the instruction, was as follows:

> Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of the said highway, but in every event, a sufficient unobstructed width of the roadway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle shall be available from a distance of two hundred (200) feet in each direction upon such highway.

As we read this statute it pertains only to the leaving of a vehicle upon the "paved or main traveled part" of a highway, and we fail to discern that the statute had any application to the facts of the present case.[2] We therefore do not see how it could be concerned in the matter of whether Instruction No. 14 was prejudicially erroneous. The plaintiff-appellant has not advanced persuasive arguments justifying the applicability of Instruction No. 11.[3]

Instruction No. 12 set forth a lengthy regulation of the Federal Highway Administration, U.S. Department of Transportation, pertaining to emergency signals of stopped vehicles. *See* 49 C.F.R. § 392.22 (1978). A portion of this regulation dealt with turn signals when a motor vehicle is stopped upon either the highway or the shoulder of a highway for any cause other than necessary traffic stops. We will assume for the purposes of this appeal that Burbank complied with this portion of the regulation. The next portion of the regulation, however, provided that whenever a vehicle is stopped upon either the traveled portion of the highway or the shoulder of a highway for any cause other than necessary traffic stops, the driver should, as soon as possible but in any event within ten minutes, place various warning devices at various places specified in the regulation away from the stopped vehicle. There is no reason to set forth the specific types of warning devices or the places at which they were to be located as there is no contention that Burbank complied with this portion of the federal regulation.

Finally the instruction stated:

> If you find that the defendants violated the provisions of this regulation without reasonable excuse or justification, then such violation would constitute neg-

---

1. Plaintiff had originally, in addition to the present appellees, sued the administrator of her husband's estate. However, summary judgment was granted as to this phase of the litigation, pursuant to the Indiana Guest Statute.

2. The court's instruction, presumably inadvertently, omitted the word "traveled" which is in the statute. This word makes it quite clear to

us that the statute did not refer to stopping on the emergency strip even though it was paved.

3. Even if the quoted statutory provisions were construed as having application to the factual situation here, because of the result we reach hereinafter with relation to the federal regulation, our ultimate opinion in this case would be unchanged.

ligence as a matter of law on the part of the defendants.

Now, coming to the challenged Instruction No. 14, it reads as follows:

Violation of a duty prescribed by statute or ordinance is generally considered negligence as a matter of law. Negligence as a matter of law, however, does not necessarily mean liability as a matter of law. A party may counter this evidence of negligence by showing justification for his noncompliance such as that his acts were the acts of a reasonably prudent man under the same circumstances, or by showing that his violation of the statute or ordinance was not a proximate cause of the injuries or damages sustained.

The focus of the objection of the plaintiff to this instruction is the inclusion of the phrase, as justification for non-compliance, "such as that his acts were the acts of a reasonably prudent man under the same circumstances."

The substantive law of the state of Indiana is that which we must apply in this case, and if we assume that the district court correctly charged in Instruction No. 12 that a violation of the federal regulation was negligence as a matter of law, we might, at least under some existing Indiana authority which has not been overruled, come quickly to the conclusion that Instruction No. 14 was erroneous. Thus, in *Northern Indiana Transit, Inc. v. Burk*, 228 Ind. 162, 89 N.E.2d 905, 909 (1950) the court stated:

When the breach of a statutory duty is held to be negligence *per se*, or negligence as a matter of law, the court holds that the legislature has created an absolute duty, which cannot be escaped by attempting to prove that the breach was in fact done in the exercise of due care.

As a matter of logic, this statement would seem to be irrefutably correct. It would seem that the legislature itself has determined that the breach of the statutory duty constituted a failure to exercise due care, or in other words, that the acts violating the statute have been legislatively determined to be not those of a reasonably prudent person under the same circumstances. This does not mean that notwithstanding the existence of an absolute duty there cannot be an excuse precluding liability, a matter which we will discuss in greater detail hereinafter. It simply means that where the violation constitutes negligence as a matter of law one of those excuses is not that the acts were the acts of reasonably prudent person under the same circumstances. *See Chicago, Rock Island & Pacific Railroad Co. v. Breckenridge*, 333 F.2d 990, 995 (8th Cir. 1964). *See also*, Note, 5 Texas Tech Law Review 159, 162 (1973), commenting on a case decided by the Supreme Court of Texas, which summarized the rationale:

[The court] reasoned that to permit exoneration from a statutory violation by proof of ordinary care, without a legally acceptable excuse, is to reduce negligence per se to a simple common law negligence standard. This would allow the jury to ignore the statutory standard of care and substitute its own standard based upon any asserted excuse, no matter how flimsy. [Footnote omitted.]

The Indiana Supreme Court followed *Burk* with *Larkins v. Kohlmeyer*, 229 Ind. 391, 98 N.E.2d 896 (1951), and dealt with the matter of excuse, without giving any recognition to the exercise of reasonable care, by quoting favorably from an Ohio case as follows:

A legal excuse, precluding liability for injuries resulting from the failure to comply with the statutory requirements respecting the operation of a motor vehicle on the public highways, must be something that would make it *impossible* to comply with the statute something over which the driver has no control, an emergency not of the driver's making causing failure to obey the statute, or an excuse or exception specifically provided in the statute itself. [Emphasis in the original].

299 Ind. at 400, 98 N.E.2d at 900.

Returning to *Burk* we find there, however, that not all statutory violations constitute negligence per se. Some may be merely *prima facie* evidence of negligence. The

determination of which standard is applicable depends upon several factors, a principal focus certainly being upon the statute itself and the duties it creates. Thus in *Burk*, 89 N.E.2d at 909–10, differentiation is made between stopping on the highway for a reasonable purpose and time as contrasted to parking, with the court noting that in another area, driving to the left of the center of the highway has been held in Indiana to be only *prima facie* evidence of negligence.

Because of the possibility that the challenged language in Instruction No. 14 is legally correct if it is merely a matter of showing that the *prima facie* evidence is overcome by the fact that the operator of the vehicle has exercised reasonable and due care under all the circumstances, we turn back to an examination of the federal regulation, notwithstanding the fact the court here did charge the jury that a violation of the regulation was negligence as a matter of law.

In doing so we consider a matter which was not urged either in the district court or on this appeal, namely, whether the fact that a regulation was involved rather than a statute or ordinance has any significance in the disposition of the present case.

The question is raised because it appears that at least in the inception of the use of violation of a statute for civil liability, or in connection with civil liability, the statute ordinarily was of a criminal nature or carried a criminal penalty. If the criminal aspect of the statute as a significant matter was not always articulated, it at least appears to have been an underlying rationale. *See* Foust, *The Use of Criminal Law as a Standard of Civil Responsibility in Indiana*, 35 Ind.L.J. 45 (1959).

*Davison v. Williams*, 251 Ind. 448, 242 N.E.2d 101 (1968), is the last opinion of the Supreme Court of Indiana addressing the present subject. In that opinion the court quoted extensively from Dean Foust's article and, indeed, as will be noted hereinafter adopted the standard for consideration of this type of case advanced in the Foust article, and stated that the "crux of the problem is the difficulty in deciding what weight should be given to a legislative definition of a *criminal wrong* in the adjudication of a civil action for damages involving a violation of that legislative enactment." 251 Ind. at 456, 242 N.E.2d at 105. [Emphasis added].

From our examination of the federal regulation it does not appear that the violation of the safety provisions would constitute anything in the nature of a criminal violation.[4]

As far as we can determine the only sanction which would be involved directly for a violation of the federal safety regulations would come about through the annual review of driving records required to be made by employers "to determine whether that driver meets minimum requirements for safe driving or is disqualified to drive a motor vehicle. . . ." In reviewing a driving record, "the motor carrier must consider any evidence that the driver has violated applicable provisions of the Federal Motor Carrier Safety Regulation. . . ." The motor carrier is also to consider the driver's accident record and any evidence that the driver has violated laws governing the operation of motor vehicles, giving great weight to violations such as speeding, reckless driving and operating while under the influence of alcohol or drugs. 49 C.F.R.

4. During the course of the trial the plaintiff interrogated Burbank as to whether he was familiar with the Department of Transportation's regulations referring to emergency signals for stopped vehicles. In this connection a booklet consisting of some 270 pages entitled, "Federal Motor Carrier Safety Regulations," issued by the American Trucking Associations Inc., was marked as a plaintiff's exhibit. Upon being tendered in evidence it was denied admission. The booklet did contain the various portions of the federal regulation quoted in Instruction No. 12. The booklet, to understate the matter, had numerous other subjects covered and its exclusion from evidence apparently was on the basis that this would be in effect admitting something comparable to Burns' Indiana statutes. We of course in this appeal can take cognizance of all of the regulations that may have any bearing on this case inasmuch as they are in the Code of Federal Regulations.

§ 391.25. It would appear therefore that if under Indiana law negligence as a matter of law would exist in the civil action only when a criminal type of safety regulation has been violated, the district court was incorrect in saying that the violation of the regulation here involved would constitute negligence as a matter of law.

Nevertheless, although the underlying basis for the negligence per se doctrine would seem to be tied in with safety rules which imposed criminal penalties for violations, we do not find any Indiana authority explicitly stating so. Therefore, we turn to another aspect of the matter being whether a safety regulation as such would be entitled to the same treatment as a statute. This subject has been the basis for some attention in law journals. *See, e. g.*, Morris, *The Role of Administrative Safety Measures in Negligence Actions*, 28 Tex.L.Rev. 143 (1949); *Comment: Admissibility of Safety Codes, Rules and Standards in Negligence Cases*, 37 Tenn.L.Rev. 581 (1970); Note, *Torts-Negligence-Violation of an Administrative Regulation as Negligence Per Se*, 55 Ky.L.J., 886 (1967).

The Restatement (Second) of Torts (1965) makes no distinction between a legislative enactment and an administrative regulation. Thus in § 288B(1) it is stated:

The unexcused violation of a legislative enactment or an administrative regulation which is adopted by the court as defining the standard of conduct of a reasonable man, is negligence in itself.

At this point, of course, it could be argued that since the trial court in the present case did adopt in effect the administrative regulation as defining the standard of conduct of a reasonable man, Instruction No. 12 was a correct statement of the law of Indiana. We cannot accept this argument, however, as the substantive law of Indiana is controlling in this case and in our opinion a litigant should not be held to a higher standard of care than that provided by the applicable state's substantive law. Further, we note in the Appendix volume of the Restatement on Torts the reporter's notes, at 374, listing cases in which it had been held that the violation of administrative regulations was negligence per se, followed by a listing of cases holding that such a violation was only evidence of negligence, the first case cited being *Town of Kirklin v. Everman*, 217 Ind. 683, 29 N.E.2d 206 (1940). We think it appropriate to add at this point that in our opinion if the violation of the regulation under present Indiana law was only evidence of negligence, this would be treated, or should be treated, by the jury as any other evidence of negligence going into the ultimate determination as to whether the driver of the truck exercised the care of a reasonably prudent person under the same or similar circumstances.

The reading of *Everman,* however, leaves us with some doubt as to whether the case is now clear-cut authority for treating violation of governmental agency regulations dealing with safety any differently than legislatively enacted rules in the area. In *Everman,* the jury was instructed that rules adopted by the State Fire Marshal, regulating the installation and maintenance of storage tanks for gasoline, were the law of the state and if the defendants buried a tank contrary to the rules of the Marshal and kept gasoline stored therein such action would be negligence per se, and that if such negligence proximately caused the injury the plaintiff should recover. The Supreme Court held that the instruction was clearly erroneous, as the legislature could not delegate the power to make laws. To that point we would have no reason for questioning the correctness of the citation in the Restatement Appendix as to the scope of the case other than that the opinion written in 1940 might seem to reflect some of the judicial thinking of the thirties with regard to the delegation of powers to administrative bodies, which thinking seems to be less in vogue now than then. Also from our reading of the case we fail to discern that the court was saying that violation of the Fire Marshal's rule was even evidence of negligence. It appears that the court primarily was saying that it was for the jury to determine from all the circumstances whether the tank was negligently installed.

In any event the court, after dealing with the matter of delegation, continued by stating that this was not a case in which the legislature had enacted a law and delegated to a ministerial body the duty of ascertaining the facts upon which the law would operate, for in that case disobedience would be in violation of the statute, not of a rule of the ministerial board. The statute involved here, however, 49 U.S.C. § 304 expressly states that it shall be the duty of the [Interstate Commerce] Commission[5] to regulate contract carriers by motor vehicle and to that end to establish reasonable requirements with respect to, *inter alia,* "safety of operation and equipment." Thus it could be argued that the legislature had delegated to the ministerial body the duty of ascertaining the facts upon which the Congressionally ordered safety laws would operate. On the other hand, the court in *Everman* continued by saying that the Indiana statute which authorized the Fire Marshal to make rules for the safety of life and property was not designed or intended to convey lawmaking power upon the Fire Marshal, and that the rules are only enforceable by order in the same manner that other safety orders are enforced, which was dependent upon notice and opportunity for hearing and review by the court. From that point of view we find ourselves again confronting the fact that the safety rules in the federal highway safety regulations seem to be dependent for enforcement by virtue of their bearing upon the continuing qualification of drivers to drive rather than their having to pay a fine or spend time in confinement.

While we are unable to find that the Indiana courts have addressed the matter of the type of regulations here involved, and the question is not without difficulty and probably is a close one, we do note a case in the Court of Appeals of the State of Washington which does touch upon the analogous federal regulation pertaining to regulations of maximum driving and on-

duty time. *NeSmith v. Bowden,* 17 Wash. App. 602, 563 P.2d 1322 (1977). In *NeSmith* the trial court refused to admit the defendant's log books and other documents bearing on the amount of on-duty and off-duty driving time of the defendant for the period of time immediately prior to the accident. The plaintiff contended the evidence was admissible to show violations of federal regulations and argued the violations constituted negligence per se and created a jury question on proximate cause. The Washington court agreed, stating:

> Federal regulations promulgated under authority of 49 U.S.C. § 304 (1963) set forth maximum driving and on-duty time for drivers of motor carriers. *See* 49 C.F.R. § 395 (1976) *et seq.* These regulations imposing restrictions on the number of hours that those engaged in interstate commerce may work in any one workweek are intended to prevent accidents due to fatigue. . . . These regulations have the force and effect of law. . . . It is clear that the maximum driving and on-duty time regulations were enacted to maintain safety on the highway and protect the public against accidents with drivers of motor carriers.

The Washington Supreme Court has adhered to the test of Restatement (Second) of Torts § 286 (1965) in determining whether violation of a public regulation must be considered in determining liability:

> The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part
>
> (a) to protect a class of persons which includes the one whose interest is invaded, and
>
> (b) to protect the particular interest which is invaded, and

---

**5.** All functions, powers and duties of the Interstate Commerce Commission to the extent that they relate to safety of operation in equipment were transferred to the Secretary of Transpor-

tation by Pub.L. 89–670, October 15, 1966, A.D. Stat. 931, which created the Department of Transportation.

(c) to protect that interest against the kind of harm which has resulted, and

(d) to protect that interest against the particular hazard from which the harm results. [Citations omitted].

563 P.2d at 1325–26. We think that the Indiana courts would permit the jury to consider the question of negligence on the facts of this particular case before us as the plaintiff would seem to meet the qualifying tests of the Restatement as quoted above. The crucial question here then, having gone full circle, is whether Indiana would say that proof of violation of the requirements enumerated in Instruction 12 was negligence per se in the classic sense that a violation precluded the jury determining whether under all of the circumstances the conduct of the defendant, even though not in compliance with the requirements of the regulation, nevertheless was in the exercise of reasonable and due care. We think under the standards laid down in the earlier cases of *Burk* and *Larkins* that the violation would not be excused. Indeed, assuming that the Restatement (Second) of Torts, states the generally prevailing law, the claim of reasonable care successfully countering or overriding the violation of the regulation probably would not prevail.

The Restatement, § 288A, although qualifying the list as not being exclusive, states that the violation of a legislative enactment or administrative regulation is excused when:

(a) the violation is reasonable because of the actor's incapacity;

(b) he neither knows nor should know of the occasion for compliance;

(c) he is unable after reasonable diligence or care to comply;

(d) he is confronted by an emergency not due to his own misconduct;

(e) compliance would involve a greater risk of harm to the actor or to others.

In the present case the defendant is not relying upon any of these standardized or generally recognized excuses for violations.

As we read the Indiana cases, however, the development of the law of excuses in that state did not stop with *Burk* and *Larkins*. We therefore consider the later Indiana cases.

*Davison v. Williams, supra,* as we have previously mentioned, was the last opinion from the Supreme Court of Indiana explicitly dealing with the matter of justification or excuse for noncompliance with the statutory mandate. The later case of *Thornton v. Pender,* Ind., 377 N.E.2d 613 (1978), did, *inter alia,* involve an instruction concerning violation of a safety statute pertaining to bicyclists. The court there did reiterate as was the case in *Davison v. Williams,* that the proof of violation of a safety regulation creates only a rebuttable presumption of negligence. The court did not, however, purport to deal with whether or not conduct consistent with that of a reasonably prudent person in the same or similar circumstances, would be an excuse or justification.

In *Davison* mandatory instructions were given with regard to the statutory duty to have operative and effective brakes on a vehicle, and failure in that respect was characterized as negligence as a matter of law, and if accompanied by proximate causation the plaintiff was entitled to recover. Also, an instruction tendered by the defendant with regard to excusing his conduct was refused. The Supreme Court reversed and adopted the standard set forth in *Satterly v. Orange Glenn School Dist. of San Diego County,* 29 Cal.2d 581, 177 P.2d 279, 283 (1947) that an act which is performed in violation of an ordinance or statute is presumptively an act of negligence but the presumption is not conclusive and may be rebutted by showing that the act was justifiable or excusable under the circumstances. The court pointed out that the rule was the one which is favored by Dean Foust in his article, *supra.* As to the question of what would constitute proof sufficient to rebut the presumption of negligence, the Indiana court again referred to California law [6] as

6. We are not unmindful that the California courts generally have been more generous than have been the Indiana courts in increasing the scope of liability in the field of negligence law,

set forth in *Alarid v. Vanier,* 50 Cal.2d 617, 327 P.2d 897 (1958), and stated the test for a jury as follows:

> Where a person has disobeyed a statute he may excuse or justify the violation in a civil action for negligence by sustaining the burden of showing that he did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law.

251 Ind. at 457, 242 N.E.2d at 105.

In *Alarid* the court referred to a number of California cases establishing three different standards. The court rejected one group of cases in which it was indicated that justification or excuse for violation of a statute was to be found only in causes or things beyond the control of the person charged with the violation and also rejected a test which stated that the jury could assume that a person of ordinary prudence would reasonably endeavor to obey the law and would do so unless causes not of his own intended making induced him without moral fault to do otherwise. Instead the court adopted the test as stated above which was adopted by the *Davison* court. 327 P.2d at 899–900.[7]

The appellant in the present case argues that the instruction given here ignores the crucial language in the *Davison*-California test, tying in the condition that the person claiming the excuse "desired to comply with the law." In the present case the appellant argues that there was no manifestation of any effort on the part of the driver to comply with the specific requirements of the federal regulation. This is indeed a troublesome qualification. Certainly it would seem that one aspect of being a

*e. g.,* in the matter of comparative negligence. Interestingly enough, enlarging the scope of what may be considered excusable conduct would appear to be a trend in the opposite direction. On the other hand, excused conduct in the case of statutory violation, is a double-edged sword and theoretically would be equally applicable to contributory negligence on the part of a plaintiff.

**7.** The problem of determining the applicable law is not rendered easier by the fact that in

person of ordinary prudence would be a desire to comply with the law, making the additional qualification surplus language. Also, conduct such as that of the driver-defendant in the present case would seem to be indicative of a desire to comply with the law in the sense of warning other travelers on the highway that he was stopped near the traveled portion of that highway. A clearer case, of course, would be if he had just pulled off the highway and come to a stop without engaging in any effort, such as he did here, by lighting various lights on his vehicle, in which case there would be no particular problem in saying that he did not evince a desire to comply with the law. Unfortunately neither the Indiana cases nor, as far as we have been able to discover, the California cases, have put any flesh of meaning on the matter of desire to comply with the law.

As noted above, the *Davison* court cited Dean Foust's article and, indeed, quoted extensively from it. Foust seemed to have anticipated by several years the standard now prevailing in Indiana of not adhering to an absolute negligence per se doctrine but rather going to the rebuttable presumption standard. The Foust article treated the matter of instructions to the jury under several possible approaches. 35 Ind.L.J. 66–7.

An underlying rationale of the Foust article appears to be some dissatisfaction with a wooden application of a negligence as a matter of law standard. This may well have been induced in part, although the author did not so state, by the burgeoning efforts of legislative and administrative bodies to search out and articulate specific safety requirements. Foust set forth his thoughts as follows:

> the long list of cases from California many of them involved unlighted taillights or brake failures. This particular category of statutory violations could, of course, exist despite all reasonable efforts of inspection and care on the driver's part when the failure had occurred without his knowledge while he was driving. On the other hand, the federal regulation involved in the present case is somewhat different in that certain specific acts were required which the truck driver admitted he did not do.

Further, a latent dissatisfaction with it as a rule of thumb has begun to appear. Perhaps the rationale for which Indiana courts and others are searching is simply this: As a statute becomes more clearly a mandate to deliberate, plan or prepare for the safety of others, an excuse for its violation becomes inherently more difficult to prove. It would be very difficult, for example, to establish an excuse for failure to have a required fire escape upon a theatre. Likewise it is improbable that excuses for operating a motor vehicle with dangerously worn tires could be produced. Inevitably as more safety preparation is mandated excuse will become more difficult and even impossible. This is nothing new—it is only the counterpart of the phrase "under the circumstances" in non-statutory negligence cases. It is the problem of the fact finder to determine whether an adequate excuse consistent with the standard of a reasonably prudent man under the circumstances has been shown. In short, the rule is constant—only the circumstances change its application and one of the circumstances is the inherent difficulty or ease of showing an excuse for violation of varying safety regulations. For this result it is not necessary to apply a negligence per se rule in one case and the "prima facie" rule in another. The latter could serve in all.

35 Ind.L.J. at 58–59. As we read the Foust article, and recalling its approval in general by the Indiana Supreme Court in *Davison* we would not regard it as being inconsistent with the challenged Instruction No. 14.

The appellees in the present case also rely upon two later Indiana cases in the intermediate appellate court of Indiana. In *Pontious v. Littleton,* 146 Ind.App. 369, 255 N.E.2d 684 (1970), the defendant against whom judgment was rendered in a bench trial on a property damage claim contended that the plaintiff had violated right-of-way statutes of the state of Indiana and, therefore, was contributorily negligent as a matter of law. The Indiana court held that the plaintiff "may rebut the *prima facie* evidence of negligence by presenting evidence

that his acts were the acts of a reasonably prudent man under the same or like circumstances . . . ." 255 N.E.2d at 690. In *Blankenship v. Huesman,* Ind.App., 362 N.E.2d 850, 852 (1977), the court outlined what it regarded as being the law of Indiana as follows:

> Violation of a duty prescribed by statute is generally negligence as a matter of law. Negligence as a matter of law, however, does not necessarily mean liability as a matter of law. *New York Central R.R. v. Glad* (1962), 242 Ind. 450, 179 N.E.2d 571. A party may counter this evidence of negligence by showing justification for noncompliance (i. e., his acts were the acts of a reasonably prudent man under the same circumstances) or by showing that his violation of the statute was not the direct cause of the injuries or damages sustained.

The appellant here argues that the *Blankenship* court relied upon *Pontious* and that *Pontious* in turn was inconsistent with prior authorities and was not supported by those authorities it did cite. We will agree that there is facial inconsistency with the language of earlier cases in the developing field of negligence based upon statutory violations but it is not our province to say what we think the law of Indiana should be or whether it is necessarily logically consistent on an overall view. Our task and the task of the trial judge was to determine what the Indiana law was at the time of the trial. The instruction given in the challenged part substantially tracks the language of *Blankenship.* We cannot say that the district court committed error in its determination of the existing Indiana law at the time of the trial. We decline to attach any significance to the fact that the challenged phrase appears in parentheses in *Blankenship* and was not so set off in Instruction No. 14.

■ Indeed, it seems rather clear that Indiana now adheres to the presumption of negligence standard and that the presumption is not of the category which is disfavored in the law, that of the irrebuttable

type. Assuming that the violation of the federal regulation was of the type which in Indiana would create the presumption of negligence [8] this simply would mean in the present case that upon the proof of the violation the plaintiff had established evidence by virtue of the presumption that the defendants were negligent, *i. e.*, that they had presumptively failed to exercise the care of a reasonably prudent person under the same or similar circumstances. The defendants, to rebut this presumption, introduced evidence of affirmative acts which they had performed, and the question then was put to the jury to determine whether the presumed negligence was countered or, in essence, whether the defendants' conduct notwithstanding the presumed negligence was that of a reasonably prudent person under the same or similar circumstances. Instruction No. 14, therefore, in our opinion, did not misstate the Indiana law.

### Plaintiff's Tendered Instructions

The plaintiff tendered three instructions, Nos. 10, 11, and 12, the gist of each of which was that if the defendants were negligent and that such negligence was the proximate cause of the plaintiff's injuries and damages, the plaintiff would not be precluded from recovery because the acts of plaintiff's husband were also a proximate cause of the injury and damages.

The appellees challenge the correctness of the statements of the law appearing in No. 10 and No. 12, and we therefore, inasmuch as the three instructions all serve the same purpose, look to Instruction No. 11 which reads as follows:

> In this action the plaintiff is seeking to recover damages from the defendants Burbank and Finer by charging that they committed an act or acts of negligence

which contributed to cause her injury. If you find from a fair preponderance of the evidence that these defendants committed one or more acts of negligence as proved by the evidence, and that one of such acts of negligence proximately contributed to cause some injury to the plaintiff as charged in the Complaint, these defendants cannot escape liability to recompense the plaintiff for the injury thus caused on the ground that the act or acts of Rocky Brandes also contributed to cause such injury.

■ It appears that this is a correct statement of the Indiana law and the question remains whether there is reversible error in the court's refusal to give the instruction. While it is a general rule that a large discretion is vested in a trial judge as to the language to be used in an instruction, *United States v. Rajewski*, 526 F.2d 149, 160 (7th Cir. 1975), *cert. denied*, 426 U.S. 908, 96 S.Ct. 2231, 48 L.Ed.2d 833 (1976), this does not mean that an instruction essential to the jury's understanding of the case should be omitted. Certainly the plaintiff, upon proper request, was entitled to have given an instruction based upon her theory of the case, if it was within the issues and if there was evidence to support it. *Rieth-Riley Construction Company, Inc. v. McCarrell*, 163 Ind.App. 613, 325 N.E.2d 844 (1975). Even though the tendered instruction is not entirely perfect, there are situations where the court is not relieved of its duty to give the substance of the requested instruction where it appears that an instruction on the issue is needful to enable the jury to determine intelligently the question. *Florists' Nationwide Telephone Delivery Network v. Florists' Telegraph Delivery Association*, 371 F.2d 263, 270 (7th Cir.), *cert. denied*, 387

---

8. While we have assumed that the violation of the federal regulation would be treated as the basis for raising a presumption of negligence under Indiana law, we regard the question as a very close one. Aside from *Everman, supra,* we note the wide range of the regulations. Thus, just ahead of those parts here involved, it is provided that "[a] motor vehicle which has a seat belt assembly at the driver's seat shall not be driven unless the driver has properly re-

strained himself with the seat belt assembly." 49 C.F.R. § 392.16. A driver who violated this section would be presumed to be contributorily negligent if he were the claimant against the driver of another vehicle. Yet, in *Gibson v. Henninger,* 350 N.E.2d 631 (1976), the Indiana Court of Appeals held that a plaintiff who had not worn a seat belt was not guilty of negligence as a matter of law.

U.S. 909, 87 S.Ct. 1691, 18 L.Ed.2d 627 (1967). The converse, of course, is that if the substance of the refused instruction is sufficiently covered by other instructions, the refusal is not ordinarily error, and in this connection, the instructions must be read as a whole. *Williams v. State*, 161 Ind.App. 57, 314 N.E.2d 764, 766 (1974).

The situation we here are addressing is somewhat different than that regarding Instruction No. 14. There the jury was affirmatively charged with what the applicable law was and if that law was incorrectly stated it could mislead the jury into a decision not consistent with the law. Here, on the other hand, the matter was one of omission: the jury was not explicitly told that plaintiff was not barred from recovery if they found that the act or acts of the plaintiff's husband also contributed to cause her injuries.

We can see no harm in Instruction No. 11 and do not believe it would have confused the jury. We think the court would have been well advised to have given the instruction, but this is not to say that the omission to do so was error. The primary purpose of instructions is to tell the jury what the applicable law is rather than what it is not. As any experienced trial lawyer knows, no crystal ball has been found to predict what aberrations of thought may infect a particular jury's deliberations. If the jury in the present case thought that some contributing negligence on the part of the plaintiff's husband would bar her recovery, they certainly did not gather that idea from the instructions the court gave. If the jurors had entertained any such idea, notwithstanding having heard the charge read to them, they had the opportunity to correct their thinking as they had the court's instructions with them during their deliberations. From our reading of the instructions as a whole it was made quite plain what was involved in the way of applicable law for the plaintiff to prevail.

The jury was told that if certain propositions had been proved their verdict should be for the plaintiff. These propositions included a finding that the defendants were negligent and that the acts or omissions were a proximate cause of the injury to the plaintiff. The jurors were also told that if they found the plaintiff's husband was negligent and that such was the *sole* proximate cause of the accident and injuries, the verdict should be for the defendant. Other instructions defined negligence and proximate cause. We believe that it was not necessary to define "sole." In sum, the instructions taken together told the jury that the negligence, if any, of the plaintiff's husband would not prevent recovery unless it was the sole cause of the accident and that otherwise the defendants would be liable if they were found to be negligent and that such negligence was *a* proximate cause of the accident.

It is true that the trial court judge did not box the compass by eliminating every conceivable reason for *not* reaching a certain verdict, nor do we think this is a requisite for a properly instructed jury. He did, however, specifically enumerate the elements for a recovery. The process of settling the instructions is one in which the judge, under frequently pressuring circumstances, must plot carefully the course of detailing numerous alternative aspects of applicable law so that the jury after finding the facts will know the proper disposition of the cause. The problem of orthodromics confronting the judge should not be beset by inconsequential and meaningless appellate shoals. If the essential elements are imparted to the jury, the judge has performed the necessary task. The judge in so doing must, of course, keep in mind that an endless refining of possible variations, if the fundamental applicable law is set forth, might well serve to confuse rather than enlighten the triers of fact.

Therefore, viewing the instructions as a whole in the light of the facts of this case, we cannot say that error was committed by the failure to give the tendered instruction. We must also add that considering all of the evidence introduced at the trial of this case we do not regard the jury verdict as being a miscarriage of justice.

For the reasons herein stated the judgment of the district court is affirmed.

AFFIRMED.