OPINION
{¶ 1} In this case, Cheryl Ann Pleimann and Michael Luthman (Plaintiffs) appeal from a summary judgment granted to James Coots and Henry Jergens Contractor, Inc. (Defendants). Plaintiffs' claims arose from an auto accident that occurred on a clear, sunny day in March, 1999. On that day, Coots was traveling to Greater Dayton Construction, Inc. (GDC) to pick up equipment. However, GDC was located across the median and was inaccessible from Coot's lane of travel (the westbound left lane on Research Park Boulevard). Consequently, Coots parked his tractor and trailer in the left westbound lane, put on the four-way flashers and overhead light, and walked over to GDC to get instructions. He did not place hazard markers or other warnings around his vehicle.
 {¶ 2} The record does not indicate how long Coots' vehicle was parked on the roadway. The vehicle was parked west of two overpasses for Interstate 675, close to the beginning of a left turn lane. At around 5:30 p.m., Pleimann was driving a Toyota Camry westbound on Research Park. Road conditions were dry, with no snow or ice on the road. However, the sun affected Pleimann because it was in her eyes. Pleimann had on sunglasses and also put the sun visor down. She additionally put her hand up at some point due to the glare.
 {¶ 3} Although Research Park had moderate curves, the roadway straightened out for almost 900 feet prior to where the tractor and trailer were parked. As a result, Pleimann would have had an unobstructed view of the roadway for almost 900 feet. Pleimann testified that the speed limit was 50 miles per hour. However, she did not think she had gotten over 40 by the time of the accident. Based on a speed of 40 to 50 miles per hour, Pleimann had 12 to 15 seconds between the first possible perception point and impact with the trailer.
 {¶ 4} Pleimann claimed she did not see the truck until just before she hit it. She drove into the rear of the trailer, and sustained various injuries, including a broken right ankle and leg, and broken left wrist.
 {¶ 5} Before trial, Defendants filed a motion for summary judgment, claiming that Pleimann was negligent as a matter of law for failing to comply with the assured clear distance statute. Defendants also contended that the cause of the accident was Pleimann's own negligence. The trial court agreed, finding that the accident was caused by Pleimann's inattentiveness. Consequently, the court granted summary judgment to Defendants. Pleimann and her husband, Mike Luthman (who filed a consortium claim), now appeal, raising the following assignments of error:
 {¶ 6} The Greene County Court of Common Pleas erred when the trial court concluded that the collision was caused by the inattentiveness of the Plaintiff.
 {¶ 7} The Greene County Common Pleas Court erred when the trial court did not make a finding that the Defendant, Jamie D. Coots, was negligent for parking his truck and low-boy trailer on Highway 835 (Research Boulevard) in violation of the Beavercreek City Ordinances, and the Ohio Revised Code Section 4511.66.
 {¶ 8} The Greene County Court of Common Pleas erred when the trial court did not make a finding that the Defendant, Jamie D. Coots, was negligent for parking his truck and low-boy trailer on Highway 835 (Research Boulevard) and failing to place any warning devices to the rear of his parked commercial motor vehicle to warn on-coming traffic of the hazard caused by the improper parking of the truck and low-boy trailer in violation of the federal commercial carrier safety regulations as delineated in 49 C.F.R.C. [sic] III, Part 392.22(b)(1).
 {¶ 9} After reviewing the record and the applicable law, we find that the trial court erred in granting summary judgment in favor of Defendants. Accordingly, the judgment of the trial court will be reversed.
 I {¶ 10} In their brief, Plaintiffs raise three assignments of error, as set forth above. However, in the argument portion of the brief, Plaintiffs discuss two "propositions of law" that do not exactly correspond to the assignments of error. The first proposition of law is that "sun glare, together with the reflectivity of snow, constitutes an extraordinary weather condition, thereby creating a jury question of discernability." In the second proposition of law, Plaintiffs contend that even if Pleimann was negligent, that does not mean that her negligence proximately caused the collision. According to Plaintiffs, jury questions exist as to the negligence of both parties, and the jury should decide the percentages of comparative negligence. Since Plaintiffs' argument has been tailored to the propositions of law, our analysis will correspond to that format. Our first discussion, therefore, will be whether a jury issue existed as to discernability.
 {¶ 11} As a preliminary point, we note that we review summary judgment decisions de novo. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102,105, 1996-Ohio-336. In other words, we apply the standards the trial court used. Brinkman v. Doughty (2000), 140 Ohio App.3d 494, 497. According to established standards, "summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." Zivich v. Mentor Soccer Club, Inc.,82 Ohio St.3d 367, 369-370, 1998-Ohio-389.
 {¶ 12} In the present case, Pleimann admittedly drove her car into the rear of a stationary object, which is prohibited by Ohio's assured clear distance statute. Specifically, R.C. 4511.21(A) says that "no person shall drive any motor vehicle * * * in and upon any street or highway at a greater speed than will permit the person to bring it to a stop within the assured clear distance ahead." In this regard, the Ohio Supreme Court has said that:
 {¶ 13} "[t]he question of whether the operator of a motor vehicle was negligent in failing to comply with the `assured-clear-distance-ahead' rule * * * is not presented to the trier of the facts where there is no substantial evidence (1) that the object with which such operator collided was located ahead of him in his lane of travel, and (2) that such object was reasonably discernible, and (3) that the object was (a) static or stationary, or (b) moving ahead of him in the same direction as such operator, or (c) came into his lane of travel within the assured clear distance ahead at a point sufficiently distant ahead of him to have made it possible, in the exercise of ordinary care, to bring his vehicle to a stop and avoid a collision." McFadden v. ElmerC. Breuer Transp. Co. (1952), 156 Ohio St. 430, paragraph one of the syllabus.
 {¶ 14} Since the tractor and trailer were stopped ahead in Pleimann's lane of travel, the only issue is whether they were reasonably discernible. In deciding that these objects were discernible, the trial court relied, among other things, on Smiddy v. Wedding Party, Inc.
(1987), 30 Ohio St.3d 35. In Smiddy, the Ohio Supreme Court held that "[a]n automobile, van, or truck stopped on a highway in a driver's path during daylight hours is, in the absence of extraordinary weather conditions, a reasonably discernible object as a matter of law." Id. at paragraph two of the syllabus.
 {¶ 15} After reviewing the record, we must agree with the trial court that the tractor and trailer were reasonably discernible as a matter of law. Pleimann's expert testified that she did not see the tractor and trailer before the collision because of sun glare. Although sun glare did exist, it is not an extraordinary condition. Instead, sun glare is something any driver faces at certain times on sunny days when the road is angled directly east or west. Furthermore, even if "snow glare" is added as a factor, such conditions are present on many sunny winter days. If drivers are excused under these circumstances, no driver would have to exercise reasonable care.
 {¶ 16} As Defendants point out, if a driver's view is restricted by the sun, the logical response is to slow down. In fact, that is one step recommended by Plaintiffs' own expert. However, Ms. Pleimann failed to slow her car in any way, even though she admitted that her view was obstructed. We agree with Defendants that accepting Plaintiffs' position would require us to embrace a logical inconsistency. As Defendants point out, the glare cannot have been so slight as to let Pleimann proceed without interruption, and at the same time, so extreme as to completely block her sight.
 {¶ 17} Sun glare is a common condition. It is also not something that suddenly arises. As has been previously stressed, "`[n]either bends nor twists in the highway, crests in the road, dim lights, fog, sleet, rain, or blinding lights of approaching motor vehicles will excuse * * * [a driver] from the duty to drive so that he can stop his vehicle within that assured clear distance ahead.'" Roszman v. Sammet (1969),20 Ohio App.2d 255, 258, reversed on other grounds (1971),26 Ohio St.2d 94. Instead, the driver of an automobile has a duty to "stop his machine whenever he is so blinded as to be unable to see the way in front of him." Parnell v. Bell (1962), 117 Ohio App. 125, 129-30.
 {¶ 18} The photos of the accident scene indicate that the highway was level and without obstruction. A westbound driver should have been able to see the parked truck, even with the sun glare. In fact, Pleimann's own expert testified that she should have had a straight line of sight to where the truck was parked when she was about 250 feet west of the overpass (a distance of about 775 feet from the point of impact). At that point, the sun was 17 degrees off to the left and would actually have been blocked, due to the overpass and tree line.
 {¶ 19} Nonetheless, even if sun glare were severe enough to completely obscure sight for the entire distance (something neither expert said), Pleimann should have slowed her vehicle or pulled off the roadway until conditions allowed her to see clearly. Again, sun glare is something drivers encounter nearly every day; it is not an extraordinary weather condition, even when the presence of snow is added. Accordingly, we reject the proposition that sun and snow glare created a jury question in this case about reasonable discernability of the tractor and trailer. Consequently, Pleimann was negligent per se because she violated the assured clear distance statute.
 II {¶ 20} The fact that Pleimann was negligent per se does not automatically mean she is precluded from any recovery. In Hichens v.Hahn (1985), 17 Ohio St.3d 212, the Ohio Supreme Court stressed that "`[n]egligence per se does not equal liability per se. Simply because the law may presume negligence from a person's violation of a statute or rule does not mean that the law presumes that such negligence was the proximate cause of the harm inflicted.'" Id. at 214 (citation omitted).
 {¶ 21} In this regard, Plaintiffs claim that two acts of alleged negligence by Coots proximately caused the accident. The first was parking the tractor and trailer on the highway in violation of R.C. 4511.66, and the second was Coots' failure to comply with federal commercial carrier safety regulations that require warning devices to be displayed when vehicles are stopped on the traveled portion of the highway.
 {¶ 22} Taking these items in reverse order, Section 392.22(b), Title 49, C.F.R. requires drivers to place warning devices on the highway as soon as practicable, and in any event, within ten minutes, if commercial motor vehicles are stopped on the traveled portion or shoulder of a highway for any cause. Violation of this regulation has been held to be negligence per se. Wallace v. Ener (C.A.5 1975), 521 F.2d 215, 221. But, cf., Brandes v. Burbank (C.A.7 1980), 613 F.2d 658, 667-78 (applying Indiana law to find that violation of regulation establishes a presumption of negligence that can be rebutted by proof that the defendant's conduct was that of a reasonably prudent person under the circumstances. The Seventh District Court of Appeals did say, however, that the question was very close).
 {¶ 23} In any event, no matter how violations are characterized, Plaintiffs did not establish that Section 392.22 applies. Section 392.22 is part of the Federal Motor Carrier Safety Regulations, which are contained in Subchapter B of Chapter III of Subtitle B to Title 49, C.F.R. According to Section 390.3, Title 49, C.F.R. the rules in Subchapter B apply to "all employers, employees, and commercial motor vehicles, which transport property or passengers in interstate commerce." Interstate commerce is defined in Section 390.5, Title 49, C.F.R. as "trade, traffic, or transportation in the United States — (1) [b]etween a place in a State and a place outside of such State * * *; 2) [b]etween two places in a State through another State or a place outside the United States; or 3) [b]etween two places in a State as part of trade, traffic, or transportation originating or terminating outside the State or the United States." Intrastate commerce is defined as anything not described in the term interstate commerce. Id.
 {¶ 24} The tractor and trailer were owned by Henry Jergens Contractor, Inc. (Jergens). On the day of the accident, Jergens employed Coots to pick up heavy equipment at GDC. However, the record does not reveal if Jergens generally transported property between states or if its general services were merely local in nature. The record also does not indicate whether the tractor and trailer were being used in interstate or intrastate commerce. Consequently, we cannot say, on the basis of the current record, if Coots' actions were subject to the safety regulations in Section 392.22.
 {¶ 25} However, even if federal safety regulations did not apply, Coots could have been guilty of negligence under Ohio law. In this regard, R.C. 4511.66 provides that:
 {¶ 26} "[u]pon any highway outside a business or residence district no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway if it is practicable to stop, park, or so leave such vehicle off the paved or main traveled part of said highway. In every event a clear and unobstructed portion of the highway opposite such standing vehicle shall be left for the free passage of other vehicles, and a clear view of such stopped vehicle shall be available from a distance of two hundred feet in each direction upon such highway."
 {¶ 27} R.C. 4511.66 is a highway safety statute, but violations are not classified as negligence per se. Instead, stopping on the traveled part of the highway is prohibited only if parking off the traveled area is impracticable. As a result, drivers may be exculpated if they cannot avoid leaving disabled vehicles on the highway. Smiddy,30 Ohio St.3d 35, 37-38.
 {¶ 28} In the present case, the tractor was not disabled. To the contrary, Coots simply parked on the highway because he needed to get directions from GDC. In this regard, we question whether Coots could have been excused from complying with the statute. Although the statute is not phrased in terms of disabled vehicles, the case law we reviewed deals with disabled vehicles or vehicles that stop in the roadway as a result of accidents. Specifically, motorists do not ordinarily leave intact, working vehicles parked on the roadway.
 {¶ 29} We do note that the record below is somewhat sketchy, as Coots was not deposed, nor was his affidavit filed. However, Plaintiffs' expert testified that there is a five foot paved shoulder on the north side of the right westbound lane, and a six foot wide grass and gravel-compacted berm to the north of the paved shoulder. As a result, 11 feet existed off the right side of the roadway where Coots might have been able to park. The pictures taken on the day of the accident indicate that most of the paved shoulder was clear, and that some snow was on the berm. In fact, even the defense expert agreed that the snow on the berm would probably not have impeded a truck from traveling over that area. Accordingly, a factual issue exists concerning whether it was practicable for Coots to park or stop off the traveled area of the highway.
 {¶ 30} A further issue exists regarding Coots' failure to park the truck in a left turn lane located just west of the area where the accident occurred. According to Plaintiffs' expert, Coots could have stopped the tractor and trailer in that area. While the left turn lane was still technically in the traveled portion of the highway, the possibility of parking in this area raises the issue of whether, even "apart from the safety standards," Coots violated a duty owed to Pleimann by "failing to do what a reasonably prudent person would have done under the circumstances." Smiddy, 30 Ohio St.3d at 38. Specifically, motorists expect traffic in turn lanes to be stopped. One could, therefore, argue that collision risk may be substantially less in that situation than when a vehicle is stopped in the regular lanes of travel.
 {¶ 31} We might also point out that other reasonable alternatives existed besides parking a vehicle in the middle of the roadway. For example, Coots could have used a telephone to call for directions. He could also have traveled west to the next intersection and turned around.
 {¶ 32} Defendants argue, however, that even if Coots is assumed to be negligent, his actions or omissions did not proximately cause the accident. We have previously observed that "[a]n injury can result from more than one proximate cause * * * [and that] to relieve an actor from liability, there must be more than an intervening cause of the resulting injury." Cross v. Krishnan, Montgomery App. No. 18772, 2001-Ohio-1645, 2001 WL 1295329, *5 (citations omitted). In Cross, we further noted that:
 {¶ 33} "`[a] break will occur when there intervenes between an agency creating a hazard and an injury resulting therefrom another conscious and responsible agency that could or should have eliminated the hazard.' * * * `However, the intervening cause must be disconnected from the negligence of the first person and must be of itself an efficient, independent, and self-producing cause of the injury.' * * * Put another way, `[t]he mere fact that the intervention of a responsible human being can be traced between the defendant's alleged wrongful act and the injury complained of does not absolve * * * [the defendant] upon the ground of lack of proximate cause if the injury ensued in the ordinary course of events, and if the intervening cause was set in motion by the defendant.'" Id. (citations omitted).
 {¶ 34} In Pond v. Leslein, 72 Ohio St.3d 50, 1995-Ohio-193, the Ohio Supreme Court gave some guidance on this point. In Pond, the plaintiff was traveling ahead of the defendant on an entrance ramp and stopped suddenly. The defendant was unable to stop and crashed into the rear of the stationary vehicle. 72 Ohio St.3d at 40-51. A few seconds after both vehicles came to a full stop, the plaintiff's car turned to the right, went down a bank, and hit some trees. The plaintiff then sued, claiming the defendant failed to maintain an assured clear distance. Id. at 51.
 {¶ 35} Although the plaintiff moved for a directed verdict on the issue of who negligently caused the collision, the trial court denied the motion and submitted all issues to the jury. Id. The jury then found that the defendant was not negligent and judgment was entered in defendant's favor. Id.
 {¶ 36} On appeal, the Ohio Supreme Court held that the defendant was negligent per se in failing to maintain an assured clear distance, and that the trial court erred in letting the jury decide if the defendant was negligent. Id. at 53. However, the court also noted that the negligence per se finding disposed of only two essential elements of the negligence claim — duty and breach of duty. It did not resolve "issues of comparative negligence, proximate cause, and damages." Id. at 53. Accordingly, the Supreme Court remanded the case for a new trial. Id.
 {¶ 37} Although Pond involved a defendant who was sued on the basis of violating the assured clear distance statute, it is equally applicable to plaintiffs who fail to comply with a statute. The point is that a party is not necessarily liable (nor is he precluded from recovery, in the case of a plaintiff) even if he is negligent per se. See also Hichens, 17 Ohio St.3d at 214 (indicating that issue of proximate cause is properly left for jury, even if plaintiff could have been viewed as negligent per se in violating R.C. 4511.39 by turning without due care). As the court remarked in Hichens, "where reasonable minds could differ as to whose acts or omissions constitute the proximate cause of the accident, such determination is better left for the jury." Id. This is consistent with the view that juries should typically resolve comparative negligence issues "unless the evidence is so compelling that reasonable minds can reach but one conclusion." Simmers v. BentleyConstr. Co., 64 Ohio St.3d 642, 646, 1992-Ohio-42.
 {¶ 38} In Shinaver v. Szymanski (1984), 14 Ohio St.3d 51, the plaintiff was negligent per se in failing to maintain an assured clear distance from a truck that stopped in front of him. Id. at 53. Likewise, the driver of that truck (sued, among others, as a defendant), was negligent per se in failing to maintain assured clear distance from a vehicle ahead. Because the question of "whether the negligence of either party was the proximate cause of the ensuing collision, in which the plaintiff driver sustained personal injuries," the Ohio Supreme Court found that summary judgment in favor of the plaintiff was improper. Id. at 55.
 {¶ 39} We subsequently distinguished Shinaver, as well as Pond, in a case where the non-negligent action of a third party broke the chain of causation between the negligence of the plaintiff and defendant. SeeDidier v. Johns (1996), 114 Ohio App.3d 746, 753-55. In the present case, however, there was no intervening non-negligent act of a third party. Instead, as in Shinaver and Pond, there is an issue with regard to whether the accident was proximately caused by Pleimann's negligence or by Coot's alleged negligence, or both. Under the circumstances, we think the issues should have been submitted to the jury instead of being decided by summary judgment. Accordingly, while the trial court did not err in finding Pleimann negligent per se, it did err in awarding summary judgment to Defendants.
 {¶ 40} As we mentioned earlier, the assignments of error do not completely correspond to the propositions of law discussed in Plaintiffs' brief. Consequently, based on the preceding analysis, the first assignment of error is sustained, to the extent that the assignment of error implies that the issue of proximate cause should have been decided by the jury. The second assignment of error is also sustained, in part, based on the same theory. However, to the extent the second assignment of error implies that the trial court should have found Coots negligent as a matter of law, it is overruled. Instead, the jury should decide if Coots' actions were negligent. The third assignment of error is also overruled, since the present state of the record does not allow us to tell whether the Federal Motor Carrier Safety Regulations apply. This is a point that could be resolved on remand, depending on the evidence that is presented at trial. And finally, we reject the first proposition of law and agree with the second proposition of law, under the circumstances of this particular case.
 {¶ 41} In view of the above discussion, the judgment of the trial court is reversed and this case is remanded for further proceedings.
FAIN, J., and YOUNG, J., concur.